BOLIN, Judge.
Alex Mockosher, while walking on a concrete sidewalk in the City of Shreveport about 4:30 o’clock in the morning, slipped and fell as the result of a large pool of oil being on the walkway. Mrs. D. R. Neely was injured under similar circumstances about 6:45 o’clock of the same morning, this case being No. 9980 (155 So.2d 437). From judgment in both cases awarding plaintiffs damages for personal injuries and related special expenses, the City of Shreveport has appealed and plaintiffs have answered the appeals praying for increases in the awards. The cases having been consolidated, both will be referred to in this opinion.
The trial judge did not assign written reasons for his findings, but we find the facts to be mostly uncontroverted and relatively simple. Mr. Mockosher arrived in Shreveport by way of a bus from Houston, Texas before daylight in the early morning hours of November 18, 1961. While walking from the bus station to a trolley stop, he slipped and fell on a concrete sidewalk near the bus station resulting in serious and permanent injuries. At the time of the accident it was dark and the sidewalk was wet from rain. The cause of the accident was a large pool of clear oil which covered the width of the walk and had become blended with the rain water.
Lige Walton, a city policeman assigned to special duties at the bus station, noticed the oil on the sidewalk sometime prior to 10:00 p. m. on the night of the accident. Someone other than plaintiffs told this officer of the condition of the sidewalk. However, for reasons not made clear, he did not relay the message. Walton went off duty at 11:00 o’clock p. m., and was relieved by Officer R. E. Grayson. While walking to the bus station, Grayson passed through the oil on the sidewalk. He made a special inspection of the condition. Shortly after arriving at the station he telephoned the police headquarters and gave information of the oily and dangerous condition of the sidewalk. The record does not reflect whether police headquarters ever relayed the message further. However, the officer who relieved Grayson at seven o’clock the next morning also notified police headquarters of the oil, by which time both accidents had already occurred. Soon after the last notice, an employee of the municipal public works department appeared with a truck and put a small amount of sand on the oily spot. About the same time an attendant at a parking lot adjoining the sidewalk in question also put some sand on the oily spot.
The crucial and primary question for consideration is whether the City of Shreveport was properly "notified” of the dangerous condition of the sidewalk. Our jurisprudence has over a long period of time, molded a general rule of sovereign immunity of municipalities from actions in tort resulting from their negligence in the exercise of governmental functions. Our courts have, however, recognized the universal exception to this rule that a municipality is liable for negligence in failing to keep its streets and sidewalks in repair. Cook v. City of Shreveport (La.App., 2 Cir., 1961) 134 So.2d 582 (and cases cited therein.)
If the defect or dangerous condition is attributable to negligent acts of the municipality or its employees then, of course, the question of whether the city received notice of the dangerous condition is of no importance. Stated another way, it is only in cases where the alleged negligence is the failure of the municipality to remedy a dangerous condition not caused by its own negligent acts that the question of notice of such condition becomes relevant. *441 In such' cases plaintiff must show the sidewalk was patently and obviously dangerous and that the city had actual or constructive notice of the dangerous condition. Constructive notice is concerned with a condition having existed for so long that defendant is presumed to know it whether it actually does or not. In the instant case we are not confronted with such a problem as the only notice alleged is actual.
Appellant contends that under its municipal charter the department of public works is charged with sole responsibility for the maintenance and repair of public sidewalks; that no actual notice of the dangerous condition of the sidewalk reached the public works department prior to the accidents, and that, therefore, the primary requisite for liability (notice of the dangerous condition) is lacking. Plaintiffs’ position, on the other hand, is that at least two municipal officers knew of the sidewalk’s condition; i. e., Officers Walden and Grayson; that Grayson reported same to the police headquarters; that it was the duty of the person receiving the message on a night shift to notify the appropriate branch or department of the city; that, therefore, notice to the police headquarters was notice to the city.
Louisiana courts have never squarely ruled on this question. In Collins v. Lyons (Orl.App., 1929) 9 La.App. 736, 120 So. 418, the court held knowledge of a defective sidewalk by a single policeman patrolling his beat was not notice to the city where no communication of such defect was made by the policeman.
In Foster v. Employers Liability Assurance Corp., Ltd. (La.App. 1 Cir., 1961) cert. denied, 129 So.2d 913 at page 915, the court said :
“ * * * Actual notice to the municipality consists of knowledge of the dangerous condition by an officer or employee having the duty to keep streets and sidewalks in good repair or having the duty to report such defects to the proper authorities.” (Thereafter follows a list of citations.) (Emphasis supplied.)
We think the rule is also correctly stated in 63 C.J.S., Municipal Corporations § 833, thusly:
"a. In General
“A municipal corporation is regarded as having notice of a defect or obstruction in a street or sidewalk where the notice is given to, or acquired by, any officer or agent in charge of, or having some dirties 'with respect to, the removal of the defects or obstructions. (Emphasis supplied.)
‡ ‡ ‡ ‡ H*
“d. Policemen
“Notice to the chief of police or to an ordinary policeman who has some duties to perform in regard to defects or obstructions in the street, or who is accustomed to reporting defects, which custom is recognized by authorities, is notice to the municipal corporation.” (Emphasis supplied.)
Conceding for the sake of argument that the police department had no duty to remedy the dangerous condition of the sidewalk, our examination of the record convinces us the person who answered the telephone at the police headquarters on the night in question had a duty to notify someone on the maintenance crew of the department of public works. While the evidence relative to the duties of a policeman upon being apprised of a dangerous condition of a sidewalk is unsatisfactory in many respects, it is difficult to conceive of a better way of notifying the municipality than the procedure employed in the instant case. At least one officer observed and inspected the oil and, after having done this, telephoned his headquarters and reported the condition. For us to hold that police headquarters had no further duty, after having received this notice in such a manner from one of its own officers in the mid- *442 die of the night, would be most unwarranted and unrealistic. We think the city was "notified” of the dangerous condition of the sidewalk.
The next question is whether the city had a sufficient time to correct the condition between the time Officer Grayson telephoned police headquarters about 11:00 o’clock p. m., and the time of the accidents (4:30 a. m. in the case of Mockosher and 6:45 for Neely).
L. W. Middlebrooks, street maintenance superintendent for the city department of public works, testified his department had men on duty twenty-four hours each day; that personnel of his department would have placed sand on the sidewalk within one hour after receiving notice of its condition. In fact when they were notified after the accidents a truck was dispatched to the scene and corrected the condition in a short time.
The rule is stated in Miller v. City of New Orleans (Orl.App., 1934) 152 So. 141, at page 142 as follows:
“In the second place, even if the defect be one which is obviously dangerous, the municipality, in the absence of statute specifically fixing liability, cannot be held unless it has had actual notice of the existence of the defect sufficiently in advance of the accident to have had opportunity to make the necessary repair * * (Emphasis supplied.)
We find plaintiffs have shown the city had sufficient time between the notice of the condition and the occurrence of both accidents in which to remove the danger.
Next for consideration is whether the oily condition of the sidewalk constituted a real and patent danger to the users thereof. The Louisiana rule on this is in accord with the universal rule which is stated as follows in White v. City of Alexandria, 216 La. 308, 43 So.2d 618 at page 620 (1949) :
“ * * * To render it liable in damages the defect complained of must be dangerous or calculated to cause injury. Defects in sidewalks that are not in the nature of traps, or from which, danger cannot reasonably be anticipated, provide no actionable negligence.”
The condition of this sidewalk was so patently dangerous we will not belabor the-point further. We hold the evidence fully substantiates a finding that the oily and wet substance on the walk rendered it dangerous even to a reasonably careful and prudent user thereof.
We now pass to the final point which is the correctness of the award to-plaintiff for his personal injuries and special damages. As a result of the accident Mockosher received a comminuted fracture1 of his left hip. At the time of his injuries-he was 61 years old. By trade he was a. woodworker and was employed operating a. woodworking machine when he got hurt. Within a period of several months following the accident he was clinically healed,, but was at least partially and permanently disabled. The lower court awarded him a total judgment of $16,000 of which $770.61 was for medical expenses and the remainder for pain and suffering, loss of earnings, etc. Defendant contends such an award is-clearly excessive while plaintiff claims it is-woefully inadequate. The trial judge was in a much better position to evaluate plaintiff’s personal injury claim than this court. From our review of the record, we are not willing to say the trier of fact made an improper award. For this reason we shall not substitute our judgment for his by decreeing the award either inadequate or excessive.
For the reasons assigned, the judgment appealed from is affirmed and appellant is-condemned to pay the costs of the stenographer for taking the evidence.
Affirmed.
GLADNEY, J., dissents with written, reasons.