185 So.2d 66 (1966)
Mr. and Mrs. Maue KIDDER, Plaintiffs and Appellees,
v.
CITY OF OPELOUSAS and United States Fire Insurance Company, Defendants and Appellants.
No. 1643.
Court of Appeal of Louisiana, Third Circuit.
March 22, 1966.
*67 Lewis & Lewis, by Seth Lewis, Jr., Opelousas, for defendant-appellant.
Boagni & Boagni, by Kenneth Boagni, Jr., Opelousas, for plaintiffs-appellees.
Before TATE, FRUGE and HOOD, JJ.
HOOD, Judge.
Mr. and Mrs. Maue Kidder instituted this action for damages for personal injuries sustained by Mrs. Kidder when she slipped and fell on a public sidewalk in the City of Opelousas, Louisiana. The suit was instituted against the city and its insurer, United States Fire Insurance Company. Judgment was rendered by the trial court in favor of plaintiffs, and defendants have appealed.
The accident occurred about 3:00 p. m. on December 21, 1963, on a concrete sidewalk which runs north and south along the east side of Market Street in Opelousas. An automobile parking lot is located on the east side of this street, and a concrete driveway crosses the sidewalk leading from the street to this parking lot.
Immediately prior to the time the accident occurred, Mrs. Kidder and her daughter were walking on this sidewalk, approaching the driveway from the north. When they reached the driveway, Mrs. Kidder slipped and fell as she stepped from the sidewalk onto the driveway. She testified that she stepped on the driveway with her right foot, that her foot slipped as she stepped and that she fell backwards, striking and injuring her left knee.
Plaintiffs contend that the accident was caused by the negligence of the defendant city in maintaining a steep, hazardous, slick and dangerous incline in the sidewalk at the place where this accident occurred.
A sidewalk is intended for public use, and a pedestrian is entitled to assume that it is sufficient and reasonably safe for use as a public walkway, subject only to such imperfections as might be readily observed by the use of ordinary care. St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273; Sherrill v. United States Fidelity & Guaranty Company, La.App. 3 Cir., 132 So. 2d 72. A municipality, however, is not an insurer of the safety of pedestrians. It must keep the sidewalks reasonably safe, but the maintaining of them in perfect condition is not necessary. To render the municipality liable in damages the defect complained of must be patently and obviously dangerous, or calculated to cause injury. McGurk v. City of Shreveport, La. App. 2 Cir., 2 So.2d 687.
*68 Defects in sidewalks which are not in the nature of traps, or from which danger cannot reasonably be anticipated, provide no actionable negligence. White v. City of Alexandria, 216 La. 308, 43 So.2d 618; Arata v. Orleans Capital Stores, Inc., 219 La. 1045, 55 So.2d 239; Brantley v. City of Baton Rouge, La.App. 1 Cir., 98 So.2d 824; Carlisle v. Parish of East Baton Rouge, La.App. 1 Cir., 114 So.2d 62; Bond v. City of Baton Rouge, La.App. 1 Cir., 129 So.2d 887; Sharp v. City of New Orleans, La.App. 4 Cir., 144 So.2d 6; Mockosher v. City of Shreveport, La.App. 2 Cir., 155 So. 2d 438; and Bustamente v. City of New Orleans, La.App. 4 Cir., 175 So.2d 404. Although a pedestrian is not required to look for hidden dangers, he nevertheless is bound to walk with his eyes open and to observe his course to see what is open and apparent. He will be held to have seen those defects in the sidewalk which are obvious and can be noticed by a reasonable and prudent person, and he cannot recover if injury is caused by his failure to see a danger which would have been apparent to a reasonably prudent and observant person. Youngblood v. Newspaper Production Company, Inc., La.App. 2 Cir., 158 So.2d 432. In any case, a municipality is not liable for damages resulting from a patently dangerous defect in a sidewalk unless it had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. St. Paul v. Mackenroth, supra; and Cook v. City of Shreveport, La.App. 2 Cir., 134 So.2d 582.
The facts and surrounding circumstances of each individual case control in determining whether, for the purposes of imposition of liability upon a municipality, a sidewalk defect was patently and obviously dangerous and was in the nature of a trap. Bustamente v. City of New Orleans, supra; and St. Paul v. Mackenroth, supra.
In St. Paul v. Mackenroth, supra, our Supreme Court said:
"In order to assess liability in a matter such as the instant one, it must be shown (1) that the unsound condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent person, and (2) that the municipality had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. `In other words, if the defect is slight, there can be no recovery and, even if it is patently dangerous, the municipality is not responsible unless it has had actual notice of it or unless the condition has been permitted to remain in its dangerous state for such a length of time as to warrant the conclusion that the municipality is negligent in failing to discover and correct it.' Parker v. City of New Orleans, La.App., 1 So.2d 123. See, Cobb v. Town of Winnsboro, La. App., 49 So.2d 625; Foster v. Employers Liability Assurance Corporation, Ltd., La.App., 129 So.2d 913; Bond v. City of Baton Rouge, La.App., 129 So.2d 887."
With these rules in mind, we now examine the facts in the instant suit.
The sidewalk at the point where the accident occurred is 3.7 feet wide. The surface of the walkway is a little more than twelve inches higher than the surface of Market Street, and the level of the parking lot immediately east of the sidewalk is at least as high as the walkway itself. There is an incline in the driveway beginning at the place where it leaves Market Street and continuing across the sidewalk up to the place where it joins the parking lot. Mr. Paul J. Mayne, a civil engineer who inspected the site, determined that there is a nine-inch slope or incline in the driveway as it crosses the 3.7-foot width of the sidewalk. According to plats prepared by Mr. Mayne, the upper portion of the driveway, that is the part which is in line with the eastern edge of the sidewalk, is only 3.84 inches lower than the highest point on the sidewalk. The lower portion of the driveway, that is the part which is in line with the western edge of the sidewalk, is approximately twelve inches lower than the highest point on the walkway.
*69 Mr. Mayne testified, and his plats show, that the steepest slope of the sidewalk is along the street side, or western edge, of the walkway, where it slopes down to the lowest point on the driveway. The sidewalk actually begins to slope downward toward the driveway at a point four feet north of the driveway. Along the eastern portion of the sidewalk the slope is gradual and almost negligible, dropping less than four inches in this distance of four feet. Along the western edge of the sidewalk the angle of the slope is gradual for about the first three feet, but then it becomes greater immediately before the walk joins the driveway, the engineer pointing out that for a distance of about one foot, along the western edge of the sidewalk, the slope reaches its greatest angle of about thirty degrees. Mr. Mayne stated that he considered the slope to be "extremely steep" at one place on the west side of the sidewalk, extending from the western edge to a point near the center of the walk. He states that insofar as the eastern half, or at least the eastern 1.7 feet, of the sidewalk is concerned, the slope of the walkway to the north line of the driveway is "relatively normal." And the photographs which were filed in evidence show that a pedestrian walking on the eastern portion of the sidewalk, and approaching the driveway from the north, would encounter only a very slight and gradual slope, extending over a distance of four feet and dropping a little less than four inches in that distance.
As plaintiff and her daughter were approaching the driveway, Mrs. Kidder was walking on the east side of the walkway, that being the side nearest the parking lot, and her daughter was walking to her right and slightly ahead of her, occupying the west side of the sidewalk. Mrs. Kidder testified, and pointed out on a photograph of the site of the accident, that the point at which she slipped was very near the eastern edge of the sidewalk. Her daughter testified that she was even nearer the east edge of the sidewalk than was stated by her mother. We are convinced from the testimony of both of these witnesses that Mrs. Kidder was less than one foot from the eastern edge of that walkway when the accident occurred. It is apparent, therefore, that she encountered only the very slight or "relatively normal" slope which existed at that point. Her daughter was walking on the western half of the sidewalk, and she negotiated the only part of the slope which was described as being "extremely steep," without difficulty.
The concrete used in constructing the driveway has been worn to the extent that many of the rocks which are embedded in and which form a part of the concrete mixture have become exposed. Plaintiffs contend that these exposed rocks are slick and are hazardous to pedestrians. Mr. Mayne testified that "the smooth, round gravel aggregate is exposed, making the footing quite slippery at that location," and that "the entire surface of the driveway has this aggregate exposed, which of course makes it naturally slippery, particularly in damp conditions with rubber soles * * *" When this accident occurred, the weather was clear and the sidewalk was dry.
Four witnesses testified that they were familiar with this driveway and they thought the surface of the entire driveway was slippery because of the exposed rocks in the concrete. Three of these witnesses stated that they had slipped and fallen on the same driveway during a period covering the last nine years, and each attributed her fall to the fact that the exposed rocks embedded in the concrete made the surface of the driveway slippery. Only one of them stated that she fell on the north edge of the driveway. Another side she slipped in the center of the entire driveway, and the third could not remember where she was when she fell. All of them stated that it was obvious to them, before and after they slipped, that the sidewalk was slippery because of the exposed rocks in it.
The record also shows that a damage suit was filed against the City of Opelousas in *70 1958, based on a fall sustained by the plaintiff in that suit on the same driveway. The present plaintiffs contend that the fact that that suit was filed establishes that this sidewalk is dangerous and that the defendant city had knowledge of its dangerous condition. We note that in that suit the plaintiff alleged that the driveway had been sealed off and abandoned, and that it thus served no useful purpose. In the instant suit, the evidence shows that at the time Mrs. Kidder fell the driveway was open and was being used, and thus it was serving a useful purpose. Also, in the earlier suit the plaintiff alleged that there was a deep and wide crack in the concrete which contributed to the accident. The evidence in the instant suit shows that there are cracks in the sidewalk at the north edge of the driveway, but these cracks are not at the place where Mrs. Kidder fell and they did not in any way cause or contribute to her fall.
At the time this accident occurred, there was a considerable amount of loose gravel and loose shell over the entire surface of the driveway. The photographs in the record show that at least a portion of the adjacent parking lot is surfaced with gravel and shell, and we assume that automobiles driving into and out of the parking lot caused gravel and shell to be deposited on the concrete driveway. Mrs. Kidder's daughter did not witness the fall, since she was slightly ahead of her mother, but she testified that there was a "lot" of gravel on the driveway. Both she and her mother stated that after the accident Mrs. Kidder's knee was bleeding and she had some gravel and shell in the wound on her knee. Mrs. Kidder testified that the cause of her fall was "a steep slope with gravel and shell on it," and she indicated that the loose gravel and shell were the primary causes of the accident. Her testimony, in part, is as follows:
"Q. And the gravel and shell is what caused you to slip?
A. That's right.
Q. Well, it wasn't the slope that you had walked over before, it was the gravel and shell on this slope?
A. Yes, sir, the gravel and shell.
Q. You could see this, couldn't you?
A. Yes, sir.
Q. There was nothing to prevent you from seeing this, was there?
A. No, sir."
Mrs. Kidder did not mention the exposed rocks in the concrete of the driveway, and she did not state at any time that the surface of the sidewalk or of the driveway was slick or slippery. The sole cause of the accident, according to her testimony, was the slope of the sidewalk and the loose gravel and shell on that slope. As we have already pointed out, there was only a very slight and gradual slope on the portion of the sidewalk on which she was walking.
We do not question the statements of witnesses to the effect that exposed rocks in the concrete caused the driveway to be more slippery than it would have been had the concrete been laid more recently, with a rough finish. But, Mrs. Kidder apparently did not feel that the condition of the concrete had anything to do with her fall, and we conclude that it was not a contributing cause of the accident. If the exposed rocks in the concrete did play a part in causing the accident, however, then we think this condition should have been as apparent and as obvious to Mrs. Kidder as it was to the other witnesses who testified. The condition of the concrete on this particular driveway appears to us to be no different than that which exists on numerous concrete sidewalks and streets which we observe almost daily, where the concrete has been worn to the extent that some of the rocks embedded in it have become exposed. A reasonably prudent person would observe that condition, just as he would observe a curb, a step, a smoothly finished strip of concrete, or a break in the surface of the walkway, and he thus would avoid an accident *71 by exercising the degree of care which is required.
The fact that four other people, besides plaintiff, have slipped on this driveway during the past nine years is not, in itself, sufficient to characterize this sidewalk as being hazardous, dangerous or as being in the nature of a trap. We are not called upon here to determine whether the steeper slope on the western side of the sidewalk or the cracks which appear in that area are of such a nature as to render the city liable in damages, because the accident involved here did not occur on that slope or in the area of those cracks.
The facts in the instant suit are similar to those presented in the cases of Stoffers v. City of Baton Rouge, La.App. 1 Cir., 15 So.2d 550; Chance v. Travelers Insurance Co., La.App. 2 Cir., 43 So.2d 287; and Burke v. Favrot, La.App., Orl., 49 So.2d 359. In the Stoffers case, plaintiff stepped on some loose gravel scattered on a concrete driveway which led from the street, across the public sidewalk on which he was walking, and into a parking lot adjacent to the sidewalk. His claim for damages was rejected on the ground that "the presence of such gravel on the sidewalk did not appear to be such an obstruction as to be dangerous." In Chance v. Travelers Insurance Company, supra, plaintiff fell as she was negotiating the slope of the sidewalk, at a point where it declined into a driveway leading from the street into a lot used by a cab company. The court rejected plaintiff's demands for damages on the ground that "a pedestrian is required to exercise ordinary care in negotiating the passage along sidewalks," and that the facts did not show "the existence of any danger arising from carelessness in construction which would render cases condemning municipalities in damages applicable." And in Burke v. Fabrot, supra, plaintiff stepped on a piece of loose gravel or rock which had been strewn on a sidewalk. The court rejected her demands, stating that a pedestrian "must see those defects which are obvious and apparent and which would be noticed by the reasonably and ordinarily prudent person," and that even if the defendant were guilty of primary negligence in permitting the gravel or rock to collect, "plaintiff would be guilty of contributory negligence."
In the instant suit, we conclude that the condition of the sidewalk and driveway at the point where Mrs. Kidder fell was not patently or obviously dangerous, and it was not calculated to cause injury. The slope of the walkway, the exposed rocks in the concrete and the loose gravel and shell on the driveway could and would have been observed by a prudent person exercising ordinary care, and thus Mrs. Kidder must be held to have seen these conditions before she fell. We do not consider any of these conditions to constitute patently dangerous defects in the sidewalk, but even if they should be so considered then they clearly are not defects which are in the nature of traps, because they could be readily observed by a reasonably prudent person exercising ordinary care.
In our opinion, the evidence fails to show that the condition of the sidewalk or driveway was patently dangerous, or in the nature of a trap, and we conclude that the learned trial judge erred in permitting plaintiffs to recover.
For the reasons herein set out, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendants, City of Opelousas and United States Fire Insurance Company, and against plaintiffs, Mr. and Mrs. Maue Kidder, rejecting plaintiffs' demands at their costs. The costs of this appeal are assessed to plaintiffs-appellees.
Reversed and rendered.
TATE, J., dissents and assigns written reasons.
*72 TATE, Judge (dissenting).
A majority of this court (although not necessarily of this panel) has decided to reverse the trial court's considered finding that the driveway across the sidewalk created a condition dangerous to pedestrians which caused Mrs. Kidder's injuries.
My respected brothers of the majority have painstakingly analyzed the evidence word-by-word and have described to the tenth of an inch the measurements of the hazardous incline involved. Yet, although accurate as to detail, by virtue of omissions and differences of emphasis the majority's factual and legal conclusions differ significantly from those validly (in my opinion) reached by the trial court.
The particular section of the sidewalk upon which Mrs. Kidder fell should be described more comprehensively. A driveway there crossed from a parking lot on the east to the street on the west. All the witnesses testified that the entire sidewalk at this point was hazardous to use when crossing the driveway because (1) there was a slope (a double-slope, as I will shortly show) at the spot, in combination with (2) an extremely slick surface of the concrete because of the polished round surfaces of the embedded gravel.
The majority finds that Mrs. Kidder fell at the upper or eastern portion of the slope, which the majority concludes was practically normal sidewalk on the basis of isolated plat measurements and an offhand statement of the engineering expert that the slope there was "relatively normal" (that is, compared with what he called the "extremely steep" western remainder of the walk), Tr. 37.
I am unable to find any evidence whatsoever in the record that supports this assumption.
The engineering expert actually testified that he had circled the "steepest slope" at the western or street side but that he "didn't mean to indicate the rest of it was not a slope". Tr. 40. The expert further testified, "* * * The entire surface of the driveway has this aggregate exposed, which of course, made it naturally slippery * * It tends to be very slippery. Now this is a condition thatIt seems to exist over the entire driveway * * *." Tr. 40. As this expert further testified, "* * * the smooth round gravel aggregate is exposed making the footing quite slippery at that location ["the outer edge of the walk"]. There is nothing with any grip to it, but smooth round stones exposed there. Now this is at the outer edge of the sidewalk as you go in, the slope decreases somewhat, but the entire slope there for two feet [i. e., the street curb shelf] and the width of the walk is in excess of what I would call good construction practice. In fact, I don't think the City would permit this driveway to be constructed today". Tr. 30.
The engineer explained that the slippery surface resulted from defective construction methods which permitted some of the non-gravel of the concrete mixture to run off.
It is sometimes difficult for lay witnesses to put into words why a particular surface is hazardous which everyone in the area knows is so. This is the error the majority opinion fell into in ignoring the uncontradicted testimony of all witnesses as to the hazardous slipperiness of the entire sidewalk at the driveway; from isolated individual facts the majority theoretically "constructed" a safe sidewalk surface despite the unanimous sworn testimony to the contrary.
However, in evidence are also pictures of the hazardous place in the sidewalk at the driveway. They show that at this point the sidewalk sloped both downward (westward) toward the street and also inward (i. e., southward from the north edge of the driveway) to the center of the driveway. This double-slope, together with the polished surface of the embedded gravel made slippery the footing for a pedestrian using any portion of the driveway; and the entire surface was slippery according to the uncontradicted testimony in this record. Perhaps the inclusion of P-4, Tr. 60, a *73 photograph looking eastward from the street across the north edge of the driveway (upon which Mrs. Kidder slipped) may show this.
Exhibit P-4

So hazardous was the sidewalk at the point that several witnesses who worked nearby testified that they walked in the street or up around into the parking lot rather than cross the slippery slope of the driveway.
*74 The engineer, for instance, testified that he had slipped on it several times, although that when he crosses it "if you stay to the upper end and you're careful, it's all right", Tr. 41. In reply to a question, "You can walk around that thing safely, can't you?", he replied, "I think you can if you are particularly careful AND if you are aware of the hazardous condition". Tr. 42. (Emphasis added.)
A lady who works in the vicinity always uses the street or the parking lot grass after she fell on the driveway several years ago, stating that to cross the sidewalk at that point "ordinary caution is not good enough", Tr. 86. She testified that she had slipped two or three times when attempting to cross the driveway "very cautiously" on occasions when after her fall a parked car forced her to cross the sidewalk at that place. Tr. 86.
The particular spot where the plaintiff Mrs. Kidder fell is close to the courthouse. She had passed there rarely. However, in addition to the engineer at least four highly respected witnesses who worked nearby testified concerning the hazardous nature of the sidewalk and as to the not-infrequent falls at the spot. It is difficult for me to understand why the majority discounts all this uncontradicted testimony of the extreme hazard of the walk at the spot this uncontradicted testimony of a hazard which would not be obvious to an infrequent user but which was obvious to these frequent passersby after their own falls and after they saw or learned of other falls at the spot.
The preponderance of the evidence indicates clearly to me, as it did to the trial court, that the entire sidewalk at the place was hazardous because of its double-slope and its surface-slipperiness, and that, whether or not loose gravel contributed to the plaintiff's fall, the primary cause of her accident was the excessive and hazardous slipperiness of the sidewalk at this point. The trial court also correctly concluded, in my opinion, that Mrs. Kidder was not contributorily negligent in stepping onto the driveway portion of the sidewalk because its extremely dangerous slipperiness was not obvious to a casual user such as Mrs. Kidder, especially considering that the pleader (here, the appellants) had the burden of establishing that her contributory negligence bars her recovery.
The majority therefore commits error of fact and law in reversing under the facts established without serious contradiction by this record. Pedestrians have consistently been allowed recovery when falling in similar circumstances: St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273; Corkern v. Travelers Insurance Co., 229 La. 592, 86 So.2d 205; Richard v. General Fire and Casualty Co., La.App. 3 Cir., 155 So.2d 676, certiorari denied; Mockosher v. City of Shreveport, La.App. 2 Cir., 155 So.2d 438; Toppi v. Arbour, La.App. 1 Cir., 119 So.2d 621. As these decisions illustrate, in the absence of actual or constructive appreciation of the hazard to her passage, only ordinary care in using the sidewalk was required of Mrs. Kidder. (Green v. Acosta, La.App. 1 Cir., 173 So.2d 291 and Bragg v. Boh Brothers Construction Co., La.App. 4 Cir., 147 So.2d 258, cited to us by defendants, are therefore inapplicable, these decisions merely noting that extreme care and caution may be required of pedestrians who traverse what they know to be a dangerous condition of the walkway.)
For the reasons above perhaps too fully stated, I must dissent respectfully from the reversing opinion of my esteemed, learned, but erroneous brothers of the majority.