MILLER, Judge.
While walking on a sidewalk-driveway near her home, Mrs. Edward A. Thistle-thwaite (hereinafter referred to as plaintiff) slipped on the upslope of a concrete driveway. She and her husband sued the City of Opelousas and its insurer to recover her medical and hospital expenses and damages for her injuries. The trial court applied the rules set forth in Kidder v. City of Opelousas, 185 So.2d 66 (La.App. 3 Cir. 1966) and dismissed plaintiffs’ suit. We affirm.
At about 1:30 p.m. on the clear, dry day of August 7, 1966, plaintiff and her mother-in-law. (Mrs. Charlotte Thistlethwaite) were walking in a northerly direction on the sidewalk bordering the east side of the north-south street named South Court. Plaintiff’s fall occurred on the north up-slope of the sidewalk-driveway which served the driveway to the residence of plaintiff’s brother-in-law, Hugh W. Thistlethwaite. Plaintiff had no difficulty walking across the downslope at the south edge of the sidewalk-driveway.
The Hugh W. Thistlethwaite home had been built by Mrs. Charlotte Thistlethwaite in 1926 and the driveway was built at that time. Mrs. Charlotte Thistlethwaite testified that the driveway had been in the same condition for twenty years prior to the accident. Tr. 72, 73.
At the time of the accident, Mrs. Charlotte Thistlethwaite lived in a home located just north of the Hugh W. Thistlethwaite home. The Edward Thistlethwaite home was just to the north of plaintiff’s mother-in-law’s home. Plaintiff and her husband had lived there for eleven years prior to the accident, and she had passed the sidewalk-driveway many times in the past, both in daylight and in the dark. She had never slipped at this point before, but usually when she walked in this area she was walking by herself and would walk on the high (east) side of the sidewalk-driveway rather than on the street side of the sidewalk-driveway. Tr. 102.
Plaintiff and her mother-in-law testified that they were walking home after having had lunch with another of plaintiff’s sister-in-laws who lived across the street and south of the three aforementioned Thistle-thwaite families. Plaintiff did not remember whether she walked across this sidewalk-driveway to get to her sister-in-law’s home. At any rate, she thought that she was alone when she walked over because she met her mother-in-law at the other home. Tr. 102. Mrs. Charlotte Thistlethwaite thought that she and plaintiff walked over together and that they walked over the same way that they came back. Tr. 74.
While walking to their respective homes they were walking from south to north with plaintiff on the curb side and Mrs. Charlotte Thistlethwaite on the property side to the east. Mrs, Charlotte Thistle-thwaite testified that when they reached the driveway, she walked to her right (to the east) and walked on the shell part of the property owner’s driveway. Tr. 69. She testified that “we were right side by side, but she was on the sloping part.” Tr. 69. Plaintiff testified at Tr. 103 that “* * * I was just walking along side of her * *
Although there is a crack in the sidewalk driveway shown in the photographs and indicated on the plat filed in evidence, there is no suggestion that the crack had any *74 thing to do with plaintiff’s fall. Plaintiff testified that she didn’t know what caused her foot to slip, but it must have been the stones in the cement. Her foot slipped like it was “on a slide.” “It was just slippery.” Tr. 94, 103, 104. On cross examination, plaintiff admitted that she doesn’t “* * * know what it could have been * * * ” that caused her to slip. “All I know is I, I slipped all the way down the place. Just never stopped.” Tr. 104.
Plaintiff established that the specifications for installing driveways have changed since this driveway was installed and that the Thistlethwaite sidewalk-driveway does not meet the current standards for building driveways across the sidewalk. It was also established that there are many driveways in Opelousas which are in the same condition as this one was on the day of the accident.
Plaintiff’s expert Mr. Paul Mayne, a Civil Engineer and Concrete Contractor, testified that the concrete surface on the driveway is smooth with the coarse aggregate exposed; that the coarse aggregate is slippery and that it is “quite dangerous” for anyone to walk along the street edge of this driveway. Mr. Mayne implied that the ordinary person would not know that this condition was slippery. His experience with concrete products had taught him that this was a dangerous condition.
Exhibit P-8 was prepared by Mr. Mayne and it shows a plain view of the sidewalk-driveway, an elevation, a profile along the center of the sidewalk-driveway and a parallel profile along the west edge of the sidewalk-driveway. The five foot wide sidewalk-driveway borders South Court Street on the west and the Hugh Thistle-thwaite property on the east. The driveway on the Hugh Thistlethwaite property is covered with shell.
P-8 shows the upward slope from the street to the property owner’s driveway to be about one foot. The north and south edges of the west side (the street side) of the sidewalk-driveway had a slope of about 30 degrees down from the sidewalk level to the ten foot long driveway as it entered the street. However, the profile showing the elevation of the sidewalk-driveway along a line located 2 feet 10(4 inches west of the east edge of the concrete sidewalk-driveway, shows less than a five degree slope. Stated another way, if plaintiff was walking northerly in the middle of the sidewalk-driveway she would be confronted with no more than a five degree slope. If she was walking on the street side edge of the sidewalk-driveway, she would be confronted with a 30 degree slope down at the southern edge of the sidewalk-driveway and another 30 degree slope up at the northern edge of the driveway.
Plaintiff did not give testimony setting forth her distance from the street at the time she slipped. Since her mother-in-law was walking on the shell driveway east of the paved sidewalk-driveway, plaintiff could have walked “along side” or “side by side” of her mother-in-law and remained along the center of the five foot wide sidewalk-driveway. No reason is suggested why plaintiff walked, if she did, along the curb side where she was confronted with a thirty degree slope when she could walk along the middle of the sidewalk-driveway and be confronted with less than a five degree slope.
As noted before, plaintiff had no difficulty walking down the southern slope but slipped while stepping up the northern slope.
All witnesses, save one, testified that they had never slipped or fallen on the sidewalk-driveway. The one witness who had slipped admitted that she never reported that fact to anyone.
The applicable law is set forth in St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964) as follows:
“In order to assess liability in a matter such as the instant one, it must be shown (1) that the unsound condition complained of was patently or obviously dangerous to a reasonably careful and ordi *75 narily prudent person, and (2) that the municipality had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it.” 165 So.2d at 276, 277.
The sidewalk-driveway described in Kidder v. City of Opelousas, 185 So.2d 66 (La.App.3d Cir.1966) was to some extent similar to the sidewalk-driveway which allegedly caused this accident. The picture shown at 185 So.2d 73 indicates that a pedestrian would have much more difficulty negotiating that sidewalk-driveway than was presented to plaintiff in the instant case. In the Kidder case, Mr. Mayne is quoted extensively concerning his opinion with reference to the slippery condition presented by the exposed aggregate. His testimony in the instant case was along the same lines.
In Kidder at 185 So.2d 71, we held:
“In the instant suit, we conclude that the condition of the sidewalk and driveway at the point where Mrs. Kidder fell was not patently or obviously dangerous, and it was not calculated to cause injury. The slope of the walkway, the exposed rocks in the concrete and the loose gravel and shell on the driveway could and would have been observed by a prudent person exercising ordinary care, and thus Mrs. Kidder must be held to have seen these conditions before she fell. We do not consider any of these conditions to constitute patently dangerous defects in the sidewalk, but even if they should be so considered then they clearly are not defects which are in the nature of traps, because they could be readily observed by a reasonably prudent person exercising ordinary care.”
As the trial court noted, the Kidder case is decisive of the issues presented here and requires judgment for defendants.
Plaintiff appellant seeks to distinguish Kidder in that there, the accident did not occur on the steeper slope adjacent to the street, but on the more level area near the property owner’s side of the sidewalk-driveway. Plaintiff submits that here, the accident did occur on the slippery, thirty degree slope.
If the fall occurred on the thirty degree slope (and the evidence does not establish this fact), there was no reason suggested why plaintiff could not have elected to have walked where the slope was less than five degrees.
Plaintiff and her relatives were in the best position to know whether or not this condition was patently dangerous. The record establishes that prior to this accident, no complaint was made.
In our opinion, the condition which allegedly caused this accident was not patently or obviously dangerous to a reasonably careful and ordinarily prudent person. The judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff appellant.
Affirmed.