HENRY F. TURNER, Judge pro tem.
This is a suit for damages for personal injuries growing out of an accident which the plaintiff alleged occurred on February 26, 1960 about dusk-darlc on the sidewalk of Milan Street near St. Charles Avenue in the City of New Orleans. The plaintiff alleged that, while he was walking along said street in the company of his wife, he stumbled on an elevated driveway and fell on the sidewalk at the site of Municipal Numbers 4200-4202 St. Charles Avenue, and that, as a result of said fall, he received certain painful injuries for which he seeks redress in the amount of $18,121.-72.
He seeks to hold the City of New Orleans, the owners of the property and their liability insurers liable in solido, alleging that the condition of the sidewalk constituted a trap and that the condition was such that the property owners and the City would be construed to have constructive notice of its dangerous condition. The defendants denied liability on the ground that the condition of the sidewalk was due to natural causes, that is, the shifting or settling of the soil underneath or by roots from trees, elevating portions of the sidewalk. On the trial of the case below, there was a judgment rejecting the demands of plaintiff, from which judgment he has appealed to this Court.
On the trial of the case below, plaintiff testified as to his fall and his injuries. His wife, who was with him at the time, did not testify. The defendants, of course, had no witnesses to the occurrence of the accident alleged upon. The defendants in the case also plead contributory negligence on the part of the plaintiff, alleging that the defect in the sidewalk was visible to the naked eye and that he could and should have seen the so-called trap and avoided same. The plaintiff testified that he was going to St. Charles Avenue with his wife to view one of the Mardi Gras Carnival parades and that he had never traversed this particular street before, as well as he could remember. He testified that the lighting at this particular .place was poor and such lighting as there was was obscured from view of the sidewalk because of trees that shut out the light from a street light above. The plaintiff testified that he was walking along Milan Street at his usual gait and was using the same care and attention that he ordinarily used while walking on the streets of the City of New Orleans, and that, when his foot struck the elevated portion of the sidewalk, he fell forward and landed on his hands and received a blow to his chin. His right thumb was severely lacerated and consti *636 tuted his most serious injury. Fortunately, he recovered from his fall with the exception of some tenderness remaining in the right thumb. The record in the case and the judge of the lower court with written reasons for judgment stated that neither the defendant, City of New Orleans nor the property owners had constructive notice of the condition of the sidewalk prior to the accident, and, therefore, that there is no liability to the plaintiff. He also found that the condition of the sidewalk was caused by erosion or tree roots.
The defendants in brief have taken the plaintiff to task for not producing his wife as a witness and ask us to' invoke the rule that, when a witness is available and is not called, the party failing to call the witness presumably fears that the testimony of such witnesses will be detrimental or contrary to their interests. The plaintiff in this case is a lawyer with years of experience behind him and certainly should have called his wife. However, under the facts and circumstances of this case and his statement as to why he did not call his wife satisfy us that this rule should not be invoked in this case. The trial court who heard the witnesses made no expression in his written reasons as to indicate that he did not believe that the accident actually happened. We are convinced that the accident did actually happen as plaintiff stated.
We have examined the testimony of witnesses in this case as well as the photographs depicting the scene of the accident and are forced to disagree with the finding of the judge of the lower court.
An examination of the photographs, particularly plaintiff’s exhibit one and plaintiff’s exhibit two, convinces us that this situation had existed for a long period of time and that the defect was so obvious that it amounted to constructive notice to any person having any interest in same.[1] The photographs show a driveway leading into a garage at the rear of the house situated at 4200-4202 St. Charles Avenue. The photos show that the condition of the driveway on the property side of the sidewalk is in a deteriorated condition while the portion of the driveway crossing the sidewalk and the apron leading to the street are in perfect condition. In fact, the defendant’s expert testified that the Avenue portion of the driveway, that is, the apron and the part that crosses the sidewalk, was poured later than the driveway. Past the sidewalk there is considerable dispute as to whether or not the driveway portion of the sidewalk was built over the sidewalk. Experts are not in complete agreement, and we find no definite statement that the sidewalk as shown in the photographs extends under the rise or driveway portion of the sidewalk. The sidewalk portion of the driveway shown in the photographs is three and one-half to four inches higher than the sidewalk, which, in our opinion, certainly constitutes a trap. Examination of the photographs show that the blocks of concrete are spaced at regular intervals at the expansion joints, appearing to be about the same distance apart until you reach the driveway. The block in the sidewalk next to the elevated portion of the driveway appears to be about one-third as long as the block leading up to it. There the sidewalk is either cut out from the driveway or the driveway is poured over the sidewalk. We do not think it makes any great difference which occurred. An examination of the photographs convinces *637 us, however, that the driveway portion of the sidewalk was, at the time of the photographs, found to be so smooth, symmetrical and regular that it could not reasonably be the result of soil erosion or tree roots as found by the lower court. The photographs were taken shortly after the accident and before the driveway was changed. We do not think it makes any difference whether the driveway was built over the concrete sidewalk or whether the concrete was removed and the driveway built. Testimony of the owners of the property to the effect that they bought the property and nothing had been done to change the condition of the driveway since their acquisition leads us to believe that the condition had existed for a long period of time. They had owned and maintained the property for more than twenty years. In fact, we find that the obvious condition of the sidewalk and driveway put them on notice of its dangerous condition. We, therefore, feel that the condition was one constituting a hazard to persons lawfully using the sidewalk and that the City of New Orleans and the property owners and their insurers are responsible to the plaintiff for his damages.
The testimony of one of the experts; a Mr. John F. Grosch, who holds a Master’s degree in science and is a registered engineer in the State of Louisiana, was uncertain as to what caused the condition of the sidewalk when he examined it following this accident. He was asked this question:
“Q. Now, with respect to that, would you tell us, in your expert opinion, what you feel caused the deviation in the sidewalk?
“A. I was unable to determine what caused it. I could not say for certain what caused the deviation.
"THE COURT:
“Was the soil sub-sided?
“THE WITNESS:
“It could have been several things.”
Further on in this case—
“THE COURT:
“How long would it take a tree to raise that driveway up ?
“THE WITNESS:
“It would take quite sometime, sir.
“THE COURT:
“Well, would your estimate how many years?
“THE WITNESS:
“It would depend on the size of the tree and type of tree.
“THE COURT:
“It would have to be over a period of a long while, wouldn’t it?
“THE WITNESS:
“Yes, it would have been.”
The plea of contributory negligence filed by the defendant has not been sustained.
As previously stated, plaintiff was not seriously injured in this accident. He itemizes his special damages for medical attention plus damages to his clothes, which amount was stipulated to be $86.18, which amount we shall allow. The injury to his thumb necessitated suturing, and sprains and bruises over other parts of his body, which were painful, were of short duration. At the time plaintiff argued his case before us, plaintiff, representing himself in proper person, frankly stated that his most serious injuries were to his pride. He still complained of tenderness to his injured thumb, but we are unable to see where an injured thumb would disable him to practice law. We think, after careful consideration of the evidence, that an award of $500.00 for pain and suffering is proper.
Accordingly, the judgment of the lower court is reversed and now judgment is rendered in favor of plaintiff and against defendants in solido in the full amount of $586.18 and all costs.
Reversed and rendered.

. “Constructive notice” of a dangerous or defective condition in a sidewalk can be shown by the long continued existence of the condition, and it is for jury to determine whether the condition complained of has existed for a sufficient time to give a municipality constructive notice thereof. Jones v. City of Los Angeles, 74 Cal.App.2d 183, 168 P.2d 480, 481.
Evidence established that city had “constructive notice” of dangerous condition of a sidewalk, justifying recovery by a pedestrian injured by a fall thereon. Lorraine v. City of Los Angeles, 55 Cal.App.2d 27, 130 P.2d 140, 142, 143. Brantley v. City of Baton Rouge, La.App., 98 So.2d 824.