165 So.2d 273

John ST. PAUL, Jr.

v.

Mrs. Richard A. MACKENROTH et al.

Nos. 47041 and 47046.

June 8, 1964.

Alvin J. Liske, City Atty., King F. Nungesser, Jr., Samuel B. Exnicios, Asst. City Attys., for defendant, appellee, applicant in 47,041.

John St. Paul, Jr., Adams & Reese, Henry B. Alsobrook, Jr., New Orleans, for respondent in 47,041.

Adams & Reese, Henry B. Alsobrook, Jr., New Orleans, for defendants-applicants in 47,046.

John St. Paul, Jr., Alvin J. Liska, City Atty., King F. Nungesser, Jr., Samuel R. Exnicios, Asst. City Attys., for respondents in 47,046.

HAMLIN, Justice.

In the exercise of our supervisory jurisdiction (Art. VII, Sec. 11, La.Const. of 1921, LSA) we directed Certiorari to the Court of Appeal, Fourth Circuit (245 La. 583, 585, 159 So.2d 289, 290) in order that we might review its judgment in favor of plaintiff and in solido against the defendants, the City of New Orleans and certain enumerated property owners and their insurer, in the full amount of $586.18 and all costs (157 So.2d 634). The Court of Appeal reversed a judgment of the trial court which had dismissed plaintiff's suit for damages for injuries suffered in a fall on a sidewalk on Milan Street alongside the property bearing Municipal Nos. 4200–4202 St. Charles Avenue, which sidewalk plaintiff alleged was defective and constituted a trap. The City of New Orleans applied for Certiorari and so did the property owners and their insurer; two writs were granted by this Court. However, one original petition was filed by plaintiff in the trial court, and the matter has been treated as one proceeding in the two lower courts; we shall also treat it as one proceeding.

The facts of record reflect that on the evening of February 26, 1960, plaintiff and his wife departed by automobile from their residence, 4311 Coliseum Street, to view a Mardi Gras parade; after parking their

car near the corner of Pitt and Milan Streets, on what is known as the uptown side of Milan Street, they crossed Milan Street and walked on the downtown side of Milan Street to St. Charles Avenue, a perpendicular street, where they boarded a street car which took them to their desired viewing point of the parade. After watching the parade they returned to St. Charles Avenue and Milan Street by means of public transportation, and then commenced walking on the uptown side of Milan Street towards their car; it was approximately 8:00 P.M. and dark, and after walking only a short distance plaintiff suffered the instant fall which he described as follows:

"However, I could see ahead of me, and I saw what appeared to be an apparently perfectly slated sidewalk. There was absolutely nothing to any way warn me that I was about to get the surprise of my life. After I walked about—maybe a hundred feet or so from the corner of St. Charles, I suddenly felt a giant—a giant pole had suddenly caught my toes or ankles, or my bottom extremities with a terrific force, and I felt like I was catapulted up in the air.

"I came down, and I don't know that I remember this too well, because I was shocked. I was not unconscious, but I was suffering from shock a good deal. I landed on my knees and stomach and mouth, and I say that because I had dirt on my knees and dirt on my stomach and lips. I was fortunate that the skin was not broken on my face, but it skinned up my knees and elbows, and I evidently tried to catch myself as I fell.

\*   \*   \*   \*   \*   \*

"When I was able to clear my head a little bit, I realized that I was flat on the sidewalk. I am not too sure about what happened, but I vaguely remember lighting some matches and seeing a concrete slab that was about 7 or 8 feet from the gutter to the garage, and some 6 to 7 feet wide. It was at least 4 inches high, and it was perpendicular to the sidewalk.

"Evidently, I was walking along there in a relaxed condition, and that the fact that I was not more severely injured, confirms my realizing that I was walking along there quietly and perfectly eased. I was enjoying myself and I must have hit the concrete rock which was immovable and the force of that must have been what I felt when I thought something knocked my feet from under me.

\*   \*   \*   \*   \*   \*

"\* \* \* there were no lights at the scene of the accident, other than a little light of a single bulb hanging from an electric cord on a gallery of a house towards Pitt Street.

"As I walked from St. Charles towards the driveway and garage, and towards the light which was further down the street, the light striking the cement pavement caused a shadow on the side of the obstruction, and to anybody walking along there from St. Charles, the piece of concrete—

\*   \*   \*   \*   \*   \*

"I saw the shadow, and thought it was a part of the sidewalk, and there was nothing to indicate that it was not a perfect sidewalk across the driveway. There was nothing to indicate the 4 inches of vertical obstruction."[1]

Plaintiff suffered minor injuries which required immediate medical treatment; he suffered discomforting sprains and bruises, and his right thumb was injured to the extent that suturing was necessitated. At the time of argument in the Court of Appeal, he was still experiencing tenderness in his thumb. In this Court, defendants' objections are not directed to the quantum awarded plaintiff.[2]

From an examination of photographs filed and properly admitted in evidence, the Court of Appeal found that there was a concrete driveway leading into a garage at the rear of the premises 4200–4202 St. Charles Avenue; that the concrete sidewalk along the side of the house was four inches below the surface of the concrete driveway;[3] and that this depression caused plaintiff to stumble and fall.[4] Our review of the record convinces us that the finding of the Court of Appeal was correct with respect to the physical condition of the locale where plaintiff fell.

A further examination of the photographs convinced the Court of Appeal that the situation and condition of the sidewalk had existed for a long period of time, and that the defect was so obvious that it amounted to constructive notice to any person having any interest in same.

The Court of Appeal made the following finding with respect to the foregoing facts:

1. The Court of Appeal, 157 So.2d 634, 636, stated: "The trial court who heard the witnesses made no expression in his written reasons as to indicate that he did not believe that the accident actually happened. We are convinced that the accident did actually happen as plaintiff stated."

2. The Court of Appeal, 157 So.2d 634, 637, stated: "He itemizes his special damages for medical attention plus damages to his clothes, which amount was stipulated to be $86.18, which amount we shall allow. The injury to his thumb necessitated

suturing, and sprains and bruises over other parts of his body, which were painful, were of short duration. \* \* \* we are unable to see where an injured thumb would disable him to practice law. We think, after careful consideration of the evidence, that an award of $500.00 for pain and suffering is proper."

3. The trial court found that the record shows that there was an elevation between the sidewalk and the driveway in question of four inches.

4. The defect has now been corrected.

"The sidewalk portion of the driveway shown in the photographs is three and one-half to four inches higher than the sidewalk, which, in our opinion, certainly constitutes a trap."

Relators argue herein:

1. The Court of Appeal erred in reversing the judgment of the trial court and holding contrary to the decision of Arata v. Orleans Capitol Stores, 219 La. 1045, 55 So.2d 239.

2. The Court of Appeal erred in finding that there was constructive notice to the City of New Orleans and to the abutting property owners.

3. The Court of Appeal erred in failing to apply the "safe route" doctrine when there was testimony in the trial court establishing facts proving conclusively that plaintiff-appellant was contributorily negligent.

4. The Court of Appeal erred in misreading and misapplying the expert testimony of the registered engineer, John F. Grosch.

5. The Court of Appeal erred when it stated that photographs filed in evidence convinced it that the defective condition had existed for a long period of time. This conclusion is not only contra to the decision of the trial judge, but also to the evidence given by defendants' witness.

6. The Court of Appeal erred in holding that the abutting property owners and the City of New Orleans were both primarily liable to plaintiff.

■ We must first make a determination as to whether the instant defect was dangerous or was in the nature of a trap. In White v. City of Alexandria, 216 La. 308, 43 So.2d 618, this Court found that there is no fixed rule for making such a determination; the facts and surrounding circumstances of each particular case control.[5]

5. "From this jurisprudence there have evolved certain legal principles which are to be considered in determining the instant controversy. Thus, a municipality is not an insurer of the safety of pedestrians. It must keep the sidewalks reasonably safe, but the maintaining of them in perfect condition is not necessary. To render it liable in damages the defect complained of must be dangerous or calculated to cause injury. Defects in sidewalks that are not in the nature of traps, or from which danger cannot reasonably be anticipated, provide no actionable negligence. Such ways of passage are intended for public use, of course, and a pedestrian is entitled to assume that they are not dangerous. Further, he is not required to constantly observe the surface of the walk or to exercise the care that would be necessary in traversing a jungle. However, he cannot be completely oblivious of its condition; he must exercise ordinary care when using it, having in mind the well recognized fact that throughout every city of any size in this state there exist irregularities in the walkways brought about by natural causes such as rains, expansion, soil erosion and tree roots.

■ Plaintiff's uncontradicted testimony indicates that at the time of the accident, he was relaxed and was walking in the manner of a reasonable and prudent man exercising ordinary care and prudence. The sidewalk was somewhat dark and shaded by trees, and there was no warning to plaintiff that he was approaching a four inch elevation on which there was no direct illumination. Reason dictates that such an elevation was dangerous and was also a barrier to natural walking. Under the facts and circumstances of this case, we find that defective sidewalk and driveway constituted a trap or was in the nature of a trap; plaintiff walked into the trap and suffered the injuries for which he claims damages.

■ In order to assess liability in a matter such as the instant one, it must be shown (1) that the unsound condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent person, and (2) that the municipality had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. "In other words, if the defect is slight, there can be no recovery and, even if it is patently dangerous, the municipality

is not reponsible unless it has had actual notice of it or unless the condition has been permitted to remain in its dangerous. state for such a length of time as to warrant the conclusion that the municipality is negligent in failing to discover and correct it." Parker v. City of New Orleans, La. App., 1 So.2d 123. See, Cobb v. Town of Winnsboro, La.App., 49 So.2d 625; Foster v. Employers Liability Assurance Corporation, Ltd., La.App., 129 So.2d 913; Bond v. City of Baton Rouge, La.App., 129 So.2d 887.

Richard A. Mackenroth, Jr. testified that the instant property was purchased by his father sometime prior to 1941; that he walked around the property when he returned from the Service and commenced managing it in 1956. The gist of his testimony is to the effect that he did not notice the condition of the sidewalk and that, "The first thing that I knew about it, was. when this suit was served, that we had a bad piece of sidewalk."

Eugene Maier, Sidewalk Inspector for the City of New Orleans and in charge of all of the complaints regarding sidewalks,. testified that it was not the practice of his. department to make inspections of all the

"For determining what is a dangerous defect in a sidewalk (that which renders the municipality responsible in damages to a pedestrian injured as a consequence thereof) there is no fixed rule; the facts and surrounding circumstances of each particular case control. The test usual-

ly applied, however, requires an answer to the question of whether or not the walk was maintained in a reasonable safe condition for persons exercising ordinary care and prudence." See, Toppi v. Arbour, La.App., 119 So.2d 621.

sidewalks of the City; that he waited until he had a complaint to make an inspection. He stated that the first notice of the instant defect was sent to the property owners on March 15, 1961; that a second notice was sent on April 4, 1961; that the defect was considered repaired on April 25, 1961. The memorandum recited: "4 inch drop by the driveway."

James N. Maloney, a realtor who assisted in managing the instant property, testified that none of the tenants had ever complained of the condition of the sidewalk; that he had been around the sidewalk many times but had never made an actual inspection before February, 1960.

John F. Grosch, a civil engineer, testified that he had performed a field inspection of the sidewalk, and that a visual inspection indicated that there was no sidewalk underneath the driveway. He could not state for certain what caused the deviation; he surmised that tree roots could have caused the elevation, and that such growth would occur over a long period of time. His concluding testimony was as follows:

"THE COURT:

"What the Court is getting at, if one side of this driveway slab had settled one inch, and the other side had settled four inches, wouldn't it indicate that there had been a sinkage?

"THE WITNESS:

"Yes, sir."

Henry Golden, a general repair man, testified that he had repaired the sidewalk and that there were roots under the defective sidewalk.

▇ The Court of Appeal made no definite finding as to the cause of the defect in the sidewalk. It felt that the condition was one constituting a hazard to persons lawfully using the sidewalk, and that because of the length of time of its existence, the City of New Orleans had constructive notice of the defect.

"* * * the courts have readily realized that it is impossible for a municipality to police each and every street within its confines with such vigilance as to detect all slight defects which might be brought about through conditions of the soil or by exterior forces and that it would be unjust to permit recovery except in cases where it has plainly neglected to perform the obligation required of it by law." Carsey v. City of New Orleans, La.App., 181 So. 819. The law does not prescribe a measure of duty so impossible of fulfillment, or a rule of liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. Goodwyn v City of Shreveport, 134 La. 820, 64 So. 762.

■ Herein, the testimony of record, supra, constrains us to conclude that the defect had been in existence for a long period of time and that, as found supra, it was in the nature of a trap. We find that the City of New Orleans was negligent in failing to discover the hazard. The present danger could and should have been anticipated or foreseen in the exercise of reasonable prudence and care. Under the facts and circumstances herein, the City of New Orleans had constructive notice of the defect and must stand liable in damages to the plaintiff. See, Bond v. City of Baton Rouge, La.App., 129 So.2d 887; Lee v. City of Baton Rouge, 243 La. 850, 147 So.2d 868. Cf. Toppi v. Arbour, La.App., 119 So.2d 621.

We find no error in the manner in which the Court of Appeal read and applied the expert testimony of John F. Grosch, supra. Mr. Grosch merely stated his findings, which the court considered in connection with the other testimony of record. We have likewise found Mr. Grosch's findings helpful in arriving at our conclusions.

We are aware of the doctrine that when two pathways, one with and one without danger, are open to a plaintiff and he chooses the former, he cannot recover damages if injured. Hudgens v. City of New Orleans, La.App., 54 So.2d 536; Bodenheimer v. City of New Orleans, La.App., 18 So.2d 224. However, the uncontradicted evidence in the present matter reflects that plaintiff was not confronted with the selection of two paths—one dangerous and one not dangerous; he was totally unaware of the hazard which caused his injuries. As stated supra, plaintiff exercised reasonable care and prudence; he was therefore entitled to assume that his path was not dangerous. White v. City of Alexandria, supra. Under these findings, plaintiff was free from any negligence contributing to the accident he experienced and the injuries he suffered.

■ We now approach a determination as to whether the property owners and their insurer can be held liable to the plaintiff in solido with the City of New Orleans.

In Arata v. Orleans Capitol Stores, 219 La. 1045, 55 So.2d 239, we stated that generally an abutting property owner is not liable for injuries sustained as a result of a defect in the adjoining sidewalk or street. We said, however, that an exception exists where the abutting property owner creates or causes the defect. See, also, Johnson v. Sewerage and Water Board, La.App., 57 So.2d 923. Herein, there is no evidence to the effect that the defendant property owners actually created or caused the defective sidewalk. In the absence of such evidence, the judgment against the property owners and their insurer must be set aside.

For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is

affirmed as to the liability of the City of New Orleans to plaintiff; the said judgment against the owners of the property and their insurer is annulled and set aside, and plaintiff's suit against the property owners and their insurer is dismissed. Costs expended by the property owners and their insurer to be paid by plaintiff; all other costs to be paid by the City of New Orleans.

HAMITER, J., concurs in the result.

165 So.2d 279