COVINGTON, Judge:
This is a suit arising out of an accident which occurred on the Ben Thomas Road (called Cooper Road in the petition) in St. Tammany Parish on Monday, June 29, 1970, at about 6:45 o’clock A.M.
Mrs. Pickens was driving her husband to work in their 1962 Chevrolet truck, proceeding westerly on said road, when the vehicle allegedly hit a “deep culvert” or “open gully” in the road, resulting in injuries to both parties, and expenses incidental thereto.
The defendant Police Jury filed an exception of no right of action based upon the doctrine of sovereign immunity. However, by House Concurrent Resolution No. 247, adopted at the Regular Session of the legislature in 1972, such immunity was waived. Therefore, the exception was properly overruled.
Trial was had on February 7, 1974, and on March 21, 1974, for oral reasons assigned, judgment was rendered and signed in favor of the plaintiffs, awarding $750.00 to Katie Pickens and $4,894.47 to Jesse Pickens. From said judgment, the defendant took a suspensive appeal.
Appellant raises, for the first time, in this Court, the question of whether the road was in fact a parish road. We are singularly unimpressed with this argument. Mr. Gary Faciane, Police Juror for the Ninth Ward, wherein the accident happened, testified that this particular section of road in that ward was primarily his responsibility and that he was very familiar with the culvert in question. Further, two employees of the Police Jury, Messrs. Jake Wascom and Emile Rahmel, testified that they, and others in their crew, of which Mr. Wascom was in charge, installed the culvert, but they did not say when the culvert was put in. As a matter of fact they had no recollection of dates of the work. Both of them testified in detail as to how culverts were installed. Both of them specifically denied leaving any open gully across the road when this one was put down. Mr. Wascom testified that he placed speed limit signs on the road in about 1967. Further, the member of the Louisiana State Police who investigated the accident, Warren G. Allen, testified that when he got to the site on Ben Thomas Road, a Police Jury truck was there, together with two Police Jurors. He also testified that at that time employees of the defendants had completed spreading shells across the road at the accident site, and were smoothing them off.
Their testimony was not only elicited without the objection of the defendant-ap *363 pellant, but most of it was obtained on direct examination of the defendant’s own witnesses! Under such circumstances, to conclude that this was not a parish road would be ludicrous — it would mean that the Police Jury was expending public funds at locations which are not in keeping with our law. We do not presume that this public body would do so, and therefore shall disregard the attempt by the Jury to disclaim responsibility for the road.
Nevertheless, we feel that our learned brother of the trial court fell into manifest error and we must therefore reverse the decision.
It is axiomatic that, having established the responsibility alluded to above, two additional facts must be proven in order to hold the defendant liable herein. The plaintiffs have fallen woefully short of such proof.
Those two facts are, of course: (1) a condition which was obviously dangerous to a reasonably careful and ordinarily prudent person, and (2) that the defendant had either actual or constructive notice thereof and that it failed to correct it within a reasonable time after such notice.
St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964); Haindel v. Sewerage & Water Board, (La.App.Orl., 1959) 115 So.2d 871, 877; Mistich v. Matthaei, 277 So.2d 239, 243 (La.App., 4th Cir., 1973); Johnson v. City of New Orleans, 284 So.2d 794 (La.App., 4th Cir., 1973).
The trial Judge, while finding that a dangerous condition existed, did not refer to notice and time in his oral reasons for judgment.
The testimony negated the possibility that the culvert had just been installed on the morning of the accident — installation thereof would take several hours, about half a day according to Mr. Wascom. It is highly unlikely that the Jury employees began this work shortly after midnight on Sunday night. Therefore, since there is nothing in the record to establish when it was installed, we may assume that it was in place for a few days, weeks, months or years. Likewise, the record does not show that there had been any complaint about its condition prior to that of Mr. Ellis on the date of the accident (and such notice may have been received by the jury after the Pickens accident had already happened) although we may also assume that numerous vehicles had crossed over it since said installation.
Assuming, arguendo, that the first necessary fact was proven by the testimony of the plaintiffs and Richard B. Ellis, who had preceded the plaintiffs down the same road, safely crossed the area at “around 6:30 and 7:00 . . . ” and, when he got to work “ . . . had our bookkeeper there to call the police juryman about the holes”, the entire final factor necessary to establish liability is definitely not set forth by the evidence.
The defendant did not fail to correct the defect within a reasonable time after notice thereof. As stated, supra, there is no proof whatsoever that the defendant had any knowledge of the alleged defect prior to the telephone call which Mr. Ellis caused to be made at some time between 6:30 A.M. and whatever time he arrived at work. By the plaintiffs’ own testimony, the mishap occurred at about 6:45 A.M. When the trooper arrived to investigate the accident, the defendant’s employees had already covered up any alleged hole.
Not only do we feel that the Jury was not shown to have failed to correct the defect within a reasonable time; to the contrary, we are of the belief that it acted with great dispatch and with a remarkable lack of delay in making said repairs.
Defendant did all that it could do as quickly as it could do so after being given notice of the condition of the road.
It is regretable that this elderly couple did in fact sustain injuries. However, to *364 hold the defendant hable m this situation would not only be in direct contravention of our jurisprudence, but also it would be inequitable and unconscionable.
Accordingly, the decision of the trial court is reversed, at plaintiffs-appellees’ cost.
Reversed.