CULPEPPER, Judge.
This is a wrongful death action by Joseph Carmouche and his wife, Enola Bruno, for the death of their son, who was killed in an automobile accident. Named as defendants are: (1) State of Louisiana, through the Department of Highways; (2) Viola An-gelle, driver of one of the two automobiles involved in the collision, and Willie Angelle, her husband; (3) State Farm Mutual Automobile Insurance Company, liability insurer of the Angelle vehicle; and (4) Morris Bruno, Jr., driver of the automobile in which the decedent was a passenger.
Finding the sole legal cause of the accident to be the negligence of the Highway Department, the trial judge rendered judgment in favor of the plaintiffs and against the Highway Department. He dismissed the third party demands of Morris Bruno, Jr. and Viola Angelle, finding they were both contributorily negligent. The Highway Department appealed. Mr. and Mrs. Angelle and State Farm answered the appeal, seeking recovery on their third party demands for the value of the Angelle automobile in the sum of $14751 The plaintiffs, Mr. and Mrs. Carmouche, did not appeal or answer the appeal, nor did Morris Bruno, Jr.
The substantial issues on appeal are: (1) Was the Highway Department guilty of any negligence which was a legal cause of the accident? (2) Was Morris Bruno, Jr. guilty of any negligence which was a legal cause of the accident? (3) Was Viola An-gelle guilty of any negligence which was a legal cause of the accident?
Louisiana Highway 726 is a .two-lane, blacktopped roadway approximately 20 feet *1376 wide. It runs north and south until it nears the junction with “Olivier Road”, at which point State Route 726 turns approximately 90 degrees to the right and thereafter proceeds in an easterly direction. The basic configuration is of a “T” intersection with the east-west portion of Route 726 forming the leg of the “T”. Olivier Road is a parish road. It is a two-lane, blacktopped roadway approximately 18 feet wide. State Route 726 is the through route.
On the day of the accident, the following signs were in place: (1) a stop sign on the right (west) side of Olivier Road directing southbound traffic on that road to stop at the junction with State Route 726; (2) an advance turn sign, consisting of a curve sign indicating a 90 degree curve to the right with a 15 mile per hour advisory speed warning, on each approach of Route 726; (3) a bar with a double arrow facing traffic approaching the intersection from the east.
The accident occurred between 7:30 P.M. and 8:00 P.M. on August 5, 1974. On that day, sunset occurred at 7:59 P.M. Central Daylight Savings Time. It was not yet dark at the time of the accident, and headlights were not needed. Sight clearance and visability at the intersection were good. Motorists proceeding in a westerly direction • on Route 726 toward the curve could see vehicles approaching from the south at least 600 feet prior to the intersection, and motorists approaching in a northerly direction could likewise see motorists proceeding in a westerly direction at least 600 feet from the intersection.
Drivers of both vehicles were thoroughly familiar with the area and the intersection. Mrs. Angelle and her husband owned several acres in this rural area where they grazed cattle. She would drive out several times a week to feed and water the cattle. Bruno’s in-laws lived in the area, and he traveled this road two or three times a week to visit them.
Mrs. Angelle, alone in her 1969 Pontiac Catalina, was approaching the intersection from the east on Route 726. She slowed down to approximately 20 miles per hour to negotiate the curve. Mr. Bruno was proceeding north on Route 726 in his 1968 Pontiac Firebird with Daniel Carmouche his only passenger. The collision occurred after Mrs. Angelle had completed the turn and was about 31 feet south of the center of the intersection. Impact was in Mrs. Angelle’s lane. The Bruno vehicle left skid marks 132 feet and 4 inches long in the right (northbound) lane of traffic. There was a gap between the end of the skid mark in Bruno’s lane and the point of impact in Mrs. Angelle’s lane.
The right front of the Bruno vehicle collided with the right front of the Angelle vehicle. The Angelle vehicle was pushed north by the collision, coming to rest 28 feet and 9 inches from the point of impact. The Bruno vehicle continued north, coming to rest 67 feet from impact in the ditch to the west of the highway. Daniel Carmouche was pronounced dead at the scene. Neither of the drivers was seriously injured. Substantial damage was done to both automobiles.
We quote from the trial judge’s “Reasons for Judgment”:
Based on the foregoing facts established at the trial of this matter, the court is of the opinion that the sole and proximate cause of the accident was the negligence of the Department of Highways in inadequately designing and building the aforementioned intersection and in failing to provide appropriate signs and warnings at the intersection. Due to the layout and design of Louisiana 726 and its junction with Olivier Road, the fact that both are two-lane blacktopped roads and due to the absence of appropriate warnings and signals, the intersection is a patently dangerous and highly deceptive trap for traffic proceeding in a northerly or westerly direction toward the intersection. A motorist proceeding northerly on Louisiana 726 toward the intersection is led to believe that Olivier Road is a continuation of Louisiana 726, while a motorist *1377 proceeding westerly toward the intersection would feel that he had the right of way. In both instances, the design of the intersection and lack of signs and warnings serve to deceive advancing motorists.”
The trial judge dismissed the reconven-tional demands of both Mrs. Angelle and Mr. Bruno, finding that they were both contributorily negligent in the following respects:
“Mr. Bruno breached the duty imposed on him by R.S. 32:121 which states that when two vehicles approach an intersection at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.
“Mrs. Angelle was negligent in that she attempted to make a left turn when such a maneuver could not be made with reasonable safety.”
Having carefully reviewed the entire record, we find that the evidence presented does not reasonably support the trial judge’s conclusions, and that they are manifestly erroneous.
The State Department of Highways is not responsible for every accident which occurs on state highways. This Court, in Doucet v. State, Department of Highways, 309 So.2d 382 (3rd Cir. 1975), discussed the issue:
“The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. It is liable for damages only when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3 Cir. 1974); Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3 Cir. 1963); Mistich v. Matthaei, 277 So.2d 239 (La.App. 4 Cir. 1973); St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964).”
The general rule concerning the duty of the highway authorities to post notices and signs warning motorists of dangerous conditions is stated in 60 C.J.S., Motor Vehicles, Section 192:
“The exercise of reasonable care by highway authorities toward motorists may require a placing of signs warning of dangerous conditions, especially where the situation is inherently dangerous, as where there are obstructions or excavations in the way, or the highway terminates abruptly, or there are dangerous curves in the highway, or a bridge has been destroyed, and also where specifically required by statute.

“No hard-and-fast rule can be laid down as to the type of warning which should be given other than that the warning should be of a size and nature commensurate with the danger ahead, and they should be reasonably adequate for the intended purpose. In determining what is reasonable warning, the place at which the danger exists, the nature of the road, and the general situation and circumstances surrounding it are to be taken into consideration, as are also the kind of travel and the speed at which vehicles will probably travel on the road.”
The evidence reveals that Olivier Road is a parish road while Route 726 is a state highway with considerably more traffic. We had the benefit of testimony from two expert traffic engineers. The plaintiffs’ witness, Mr. Evans, testified that he thought the only appropriate signage is to have a stop sign at the leg of the “T”. In this case that would mean placing a stop sign on Route 726 controlling traffic approaching the intersection from the east. He stated this would be the only way to eliminate “all conflict” for motorists ap *1378 proaching the intersection. He did admit that the conditions warranting a stop sign at the leg of this “T” intersection would be different if Olivier Road were merely a private drive, since it would then not have been open to the public. He also noted that signs serve a more important purpose for the stranger, and that, as a general rule, local people who are familiar with the area don’t pay attention to signs.
Testifying as an expert on behalf of the Highway Department was Mr. Lawrence Harry, the District Traffic Engineer for the area in which the accident occurred. He stated that in determining what signage, if any, is called for, he considers the geometries, the sight distances, the accident histories of the location, and the traffic volume. He felt the right of way and signage at the time of the accident was adequate. It was his further opinion that it is safer to leave the right of way on the curve on Route 726, than to force one approach to the curve to stop and look down a parish road with restricted sight distances. Moreover, a person unfamiliar with the area would have come up on the north approach and seen the curve sign, indicating the road curved sharply to the right, and wouldn’t even have known of the extension of the road northward.
This intersection is in a rural area of Lafayette Parish. Signs were posted warning of a 90-degree curve ahead with an advisory speed of 15 miles per hour. Sight distance was good at least as far back as 600 feet from the intersection. We find, based on these facts, the plaintiffs have failed in their burden of proving the State negligent in signing this intersection. As far as negligence in design, no testimony was presented to support this contention. Even Mr. Evans testified that he felt the intersection, while improperly signed, was adequately designed for the conditions.
Even had we found the State negligent in signing the intersection, we would not hold the State liable in this case since both drivers admittedly were very familiar with the area, knew there was a stop sign on Olivier Road, and knew that State Route 726 was the through route. Even if the intersection was inadequately signed, there was no causal relationship between the absence of a stop sign on the eastern approach and the collision between the two vehicles.
We will now consider the conduct of Viola Angelle and Morris Bruno, Jr. Mrs. An-gelle claimed she had slowed to approximately 20 miles per hour to negotiate the curve. This was not disputed by the other witnesses. She said she first noticed the Bruno vehicle when she was several car lengths from the intersection. Believing there would be no problem, she began and completed the left hand turn, continuing south on Route 726 and remaining in her own lane the entire time. Immediately after completing the turn, she looked up to see the Bruno vehicle coming toward her at a “pretty high speed.” Within a split second, the other car had crossed over into her lane, and they collided. It was only an instant before the accident that she realized there was going to be a collision. She does not remember doing anything to try and avoid the accident. The impact was in her lane.
Mrs. Angelle further testified that even if there had been a stop sign controlling her access to the intersection, she would have stopped and then proceeded to turn just as she did since the Bruno vehicle was still 600 feet down the road.
Mr. Bruno testified that he and Car-mouche and a friend driving in a car behind them had just left a bar a couple of miles down the road where they had each had two beers. He testified he was going between 35 and 40 miles per hour just before the accident. An insurance adjuster claimed Mr. Bruno had told him he had been going “about 50”. Plaintiffs’ expert traffic engineer estimated the Bruno vehicle was traveling at least 30 miles per hour at the moment of impact. Considering the length of the skid marks made by the Bruno automobile, Mr. Evans estimated the initial speed before braking to have been 57.3 miles per hour. Using Mr. Evans’ esti *1379 mate of 30 miles per hour at point of impact as well as his estimate that it would take a vehicle 139 feet to come to a stop if it were traveling at 50 miles per hour, Mr. Harry estimated Bruno’s vehicle was traveling closer to 80 miles per hour before the brakes were first applied.
Mr. Bruno testified that he did not look to the right as he approached the intersection. It was his intention to continue straight on down Olivier Road. He claims he first saw the Angelle vehicle when it was in the curve, and that it had dipped down into his lane. He tried to take evasive action but does not remember slamming on his brakes.
Trooper Menard, the investigating officer, testified the Bruno vehicle had left skid marks 132 feet and 4 inches long in the northbound lane. Then there was a gap before the actual impact, which occurred in the southbound lane of traffic. Trooper Menard testified that there was no physical evidence at the scene which indicated to him that the Angelle vehicle had veered into the left lane of Route 726 at any time. All of the physical evidence indicated that the Bruno vehicle had veered into its opposing or left lane.
We find the conduct of Morris Bruno, Jr. to be the sole legal cause of this accident. State Route 726 was the through route. If Mr. Bruno intended to take Olivier Road, he had the duty to yield to oncoming traffic on Route 726. He would in effect be executing a left turn from the main highway. Yet he approached the intersection at a speed in excess of what was reasonable and did not even look to his right to determine if any vehicles were approaching from the east. He failed to keep his car under control and, as a result, collided with Mrs. Angelle, who had carefully made the turn and was heading straight down Route 726 in her proper lane of traffic.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant-appellant, State of Louisiana, through the Department of Highways, and against the plaintiffs, Joseph Carmouche and Enola Bruno Carmouche, dismissing plaintiffs’ suit as against said defendant. It is further ordered, adjudged and decreed that there be judgment herein in favor of Willie Angelle and Viola Angelle for the sum of $100 and in favor of State Farm Mutual Automobile Insurance Company for the sum of $1375 on their respective third party demands against Morris Bruno, Jr. All other principal and incidental demands are dismissed. All costs in the trial court, as well as the costs of this appeal, are assessed against Morris Bruno, Jr.
REVERSED AND RENDERED.