COVINGTON, Judge.
This is an appeal by the defendant, City of Bogalusa, from a judgment in favor of the plaintiff, Jenny Lee Smith Baggett, for the sum of $32,147.61, as a result of personal injuries the plaintiff sustained in a trip- and-fall case while using the public streets of the defendant municipality. We affirm.
The plaintiff, a 35-year-old woman who was employed as a practical nurse in an internist’s office, tripped and fell over an elevated portion of a public street. This elevation resulted from a patch job repair which had been made by employees of the municipality in patching a hole in the roadway, the patch job extending about two inches above the level of the concrete surface of the street. At the time of the accident, the plaintiff was crossing Avenue F (the principal business district street for that section of Bogalusa known locally as Pleasant Hill) in the middle of the block to obtain admission tickets to an athletic event from the owner of a commercial establishment situated on the opposite side of the street from where the plaintiff had parked. As a result of the accident, she sustained a non-displaeed fracture of the lateral malleous of the left ankle, resulting in thrombo-phlebitis and a pulmonary embolism. The trial court found Mrs. Baggett free of negligence and the city guilty of negligence in failing to maintain the public street in a reasonably safe condition for the use of pedestrians exercising ordinary care. The trial court further found that the “condition of the street at the accident scene was defective and constituted a trap.”
The facts of the record reflect that on February 17, 1973, about 3:30 P.M., Mrs. Baggett parked her automobile on the east side of Avenue F near the center of the 700 block (the street is 60 feet from curb to curb and generally runs in a north-south direction). After allowing the traffic to clear the 700 block, she began to cross the street. At some point near the centerline of the avenue, she noticed that a car (which had been parked at the time she started across the street), had backed out from the curb and had commenced moving in her direction in a sudden and rapid maneuver. While watching the car, she hurried to cross the street and, as she did so, she tripped and fell on the elevated patch in the road.
In considering the negligence of the plaintiff, the trial court found that there was no city ordinance forbidding the crossing of the roadway at points other than at the corners of the streets, and that it was a common practice for pedestrians to cross the street in the place and manner that the plaintiff had done. The trial court further found on this question that the plaintiff was attentive to the traffic situation, and observed that but for her attention, there was a likelihood that she would have been struck by the car that suddenly approached her. The court concluded that Mrs. Bag-gett “was free of negligence. She had no reason to assume the street unsafe for a quick dash to safety.” We agree. The record supports the trial court’s finding.
The law of this state relating to the duty owed by the City to users of public streets and sidewalks is succinctly stated by the Court in Reinhard v. City of New Orleans, 371 So.2d 286, 288 (La.App. 4 Cir. 1979), writ denied, 374 So.2d 656 (La.1979):
“The city has a duty to maintain its streets and sidewalks in a safe condition for use by the public.”
In the case of St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273, 276 (1964), the Court said:
“We must first make a determination as to whether the instant defect was dangerous or was in the nature of a trap. In White v. City of Alexandria, 216 La. 308, 43 So.2d 618, this Court found that there is no fixed rule for making such a determination; the facts and surrounding circumstances of each particular case control.[5]”
*1212 There is no fixed and hard rule for determining the liability of a municipality; the facts and circumstances of the particular case must be considered by the Court for this determination. The necessary steps which a Court must take in order to determine a municipality’s liability were set forth in St. Paul v. Mackenroth, supra, pages 276-277, 165 So.2d 273 (a case in which the city was held to have had constructive notice of the defect in a sidewalk, because the defect “had been in existence for a long period of time” and that “it was in the nature of a trap.”), as follows:
“In order to assess liability in a matter such as the instant one, it must be shown (1) that the unsound condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent person, and (2) that the municipality had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. In other words, if the defect is slight, there can be no recovery and, even if it is patently dangerous, the municipality is not reponsible (sic) unless it has had actual notice of it or unless the condition has been permitted to remain in its dangerous state for such a length of time as to warrant the conclusion that the municipality is negligent in failing to discover and correct it. Parker v. City of New Orleans, La.App., 1 So.2d 123. See, Cobb v. Town of Winnsboro, La.App., 49 So.2d 625; Foster v. Employers Liability Assurance Corporation, Ltd., La.App., 129 So.2d 913; Bond v. City of Baton Rouge, La.App., 129 So.2d 887.”
The evidence in the instant case is convincing that the City of Bogalusa had “constructive notice” [1] (if not actual notice) of the condition of Avenue F, because the defective patchwork had been performed by the city’s employees, had been in existence for a considerable period of time, and was in the nature of a trap. In remarking on the evidence relating to this issue, the trial judge said:
“It is obvious to the Court that the defective street condition was in existence for many months before the accident. The absence of any inspection procedure coupled with the fact that several City employees charged with the responsibility of street maintenance passed the defective patch on many occasions leads to the inescapable conclusion that the City must be charged with constructive notice, if not actual notice of the defective condition.”
The trial judge also found as a fact that the “two inch extrusion above the street level” was a defective patch and constituted “a trap” which was dangerous to crossing pedestrians. We also are of the opinion that under the foregoing circumstances the two- *1213 inch extrusion is an unusually hazardous and trap-like condition. It is certainly foreseeable that a pedestrian crossing this important business thoroughfare might injure himself by tripping and falling on this defective patch. See Eble v. City of New Orleans, 181 So.2d 805 (La.App. 4 Cir. 1966).
We are in accord with the foregoing findings of fact and conclusion of the trial judge, and likewise conclude that the proximate cause of the plaintiff’s damages was the defendant’s negligence. We have studied the cases cited by the City and find them inapposite.
The City also complained on appeal of the quantum awarded. For the serious injuries sustained by the plaintiff herein, we consider the modest award made by the trial court to be well within its discretion. LSA-C.C. art. 1934(3). The plaintiff suffered a broken ankle, requiring a cast. Soon after the accident, the plaintiff had to be admitted to the hospital suffering from thrombophlebitis. As a result of the throm-bophlebitis, a clot broke loose and caused a pulmonary embolism. The plaintiff’s ankle fracture and resulting thrombophlebitis and pulmonary embolism caused Mrs. Baggett considerable pain and mental anguish. Due to the injury and consequential medical problems, plaintiff was on crutches until the end of the summer of 1973. She was unable to work, had no income (she was the sole provider of her family unit), and consequently lost her home, automobile and insurance policies. The award to Mrs. Bag-gett is supported by the evidence, and there is no manifest error in fixing the award permitted by the trial court. We thus affirm the award.
For the above and foregoing reasons, the judgment is affirmed at defendant-appellant’s costs.
AFFIRMED.

[“5 ‘From this jurisprudence there have evolved certain legal principles which are to be considered in determining the instant controversy. Thus, a municipality is not an insurer of the safety of pedestrians. It must keep the sidewalks reasonably safe, but the maintaining of them in perfect condition is not necessary. To render it liable in damages the defect complained of must be dangerous or calculated to *1212 cause injury. Defects in sidewalks that are not in the nature of traps, or from which danger cannot reasonably be anticipated, provide no actionable negligence. Such ways of passage are intended for public use, of course, and a pedestrian is entitled to assume that they are not dangerous. Further, he is not required to constantly observe the surface of the walk or to exercise the care that would be necessary in traversing a jungle. However, he cannot be completely oblivious of its condition; he must exercise ordinary care when using it, having in mind the well recognized fact that throughout every city of any size in this state there exist irregularities in the walkways brought about by natural causes such as rains, expansion, soil erosion and tree roots.
‘For determining what is a dangerous defect in a sidewalk (that which renders the municipality responsible in damages to a pedestrian injured as a consequence thereof) there is no fixed rule; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question of whether or not the walk was maintained in a reasonable safe condition for persons exercising ordinary care and prudence.’ See, Toppi v. Arbour, La.App., 119 So.2d 621.”]

. In view of the recent case of Leroy Jones et ux. v. The City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 on the docket of the Supreme Court of Louisiana, and its application of LSA-C.C. art. 2317 to municipalities and other public bodies, “notice” may no longer be a requisite to proving liability against such public bodies. Once the injured party proves custody, defect and causation, “the custodian can escape liability only by showing that the harm was caused by the fault of the victim (injured party), by the fault of a third person, or by an irresistible force.” In other words, the “strict liability” of Loescher v. Parr, 324 So.2d 441 (La.1976), has been extended to public bodies.