CUTRER, Judge.
This appeal arises out of a suit brought by Elaine Statum, individually and on behalf of her children against the State of Louisiana, through the Department of Transportation and Development (Department of Highways) for the wrongful death of plaintiff’s husband, Lester Statum. Sta-tum died as a result of injuries received in a two-vehicle accident on Louisiana Highway 109 near Starks, Louisiana. There were other defendants initially but the claims against the other defendants were settled, leaving only the Department of Highways as a defendant.
After a non-jury trial, the trial judge rendered judgment dismissing plaintiff’s suit. Plaintiff appeals. We affirm.
The facts of the case are set forth in the trial judge’s reasons for judgment as follows:
“The facts of the accident are substantially as follows. Statum, his wife, their two children ages 6 and 7, and Mrs. Sta-tum’s 12-year-old son by a previous marriage, were traveling north in their 1974 Dodge automobile. Its color was bright canary yellow. The highway was unlighted, and the night was damp and dark. The highway is two-laned, approximately 20' in width. The shoulder was unstabilized, from a construction standpoint, and was probably soft. The testimony was conflicting as to whether the shoulder was wide enough to accommodate the full width of the car. Statum lived at Niblett’s Bluff, a short distance from the scene of the accident, and was familiar with this stretch of highway, having traveled it often.

“Suddenly, the lights on the car began flickering and shortly thereafter, went out. Statum stopped the car with the right wheels 1-lW on the shoulder. He got out, walked to the front of the car, 
*536
and raised the hood. He was standing in front of the ear looking under the hood, apparently attempting to locate and correct the source of the electrical problem. All of the other passengers remained in the car.

“While he was standing in this position looking under the raised hood, a pick-up truck, driven by Chester L. Cormier, also traveling in a northerly direction, struck the Statum vehicle in the rear. Approximately two-thirds of the right front of the Cormier vehicle collided with approximately two-thirds of the left rear of the Statum vehicle. The Cormier truck was entirely within its north-bound lane of traffic while approaching the car and at the point of impact. Skid marks from the Cormier vehicle began 10-15 feet south of the major debris.

“A motor home was approaching from the south at the time of the accident. As it neared the scene, its driver and two passengers saw an object in the oncoming lights of the Cormier vehicle. The motor home began to slow down, and they saw that the object was a vehicle stalled in the north-bound lane. They saw Cormier continue to approach the stalled car and saw the collision. The motor home was 100-150 feet from the Statum car at the moment of impact.

“Cormier had just left the Sportsman’s Lounge, less than one-half mile south of the site of the accident. He had nothing to drink from the time of the accident until he was given a blood alcohol test at 9:00 P.M., three hours after the accident. His blood alcohol level was found to be .28 milligrams.”

The substantial issue presented by this appeal is whether the shoulder of Highway 109, at the scene of the accident, created an unreasonable risk of harm and was therefore defective.
Due to our conclusion as to this issue, we do not reach the issue of whether the Department of Highways was under a duty to upgrade Louisiana 109 to meet the recommended standards which would suggest wider shoulders than those present at the scene of the accident. This issue was addressed by the trial court in its reasons for dismissal but we do not reach this issue. Also, we do not reach the issue of victim fault or third party fault.
DEFECTIVE SHOULDER
In the recent case of Burris v. Insured Lloyds, 417 So.2d 511 (La.App. 3rd Cir. 1982), writ den., 420 So.2d 982 (La.1982), this court addressed the issue of the State’s liability as follows:
“ ‘The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. It is liable for damages only when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3 Cir.1974); Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3 Cir.1963); Mistich v. Matthaei, 277 So.2d 239 (La.App. 4 Cir.1973); St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (La.1964).’
“When one’s basis for recovery lies in strict liability rather than in negligence, the plaintiff is relieved of proving the State’s knowledge, constructive or otherwise, of the hazardous condition or defect. Kent v. Gulf States Utilities, et al., 418 So.2d 493 (La.1982).”
In this case, the Department of Highways’ knowledge of the shoulder conditions at the scene of the accident is not at issue. Therefore, we will only decide the factual *537 question of whether the shoulder in question created an unreasonable risk of harm to a motorist using same to park his vehicle when faced with an emergency.
In making this determination, we keep in mind the standard set forth in the case of Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975), where the court observed:
“There is no fixed rule for determining what is a dangerous defect in a public way; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question: Was the public way [shoulder in this case] maintained in a reasonably safe condition for persons exercising ordinary care and prudence? ....” (Citations omitted.)
The trial judge, in his reasons for judgment, made the following findings of fact as to the condition of the shoulders in question:

“The stretch of Louisiana 109 in question is an approximately twelve-miles long section commonly called the Too-mey-Starks Highway. In 1950, it was a gravel road. In 1953, it was reconstructed with soil cement and asphaltic concrete to provide for a ten-foot roadway surface in each lane of traffic, and a six-foot dirt shoulder. It was constructed as a farm-to-market road, and was constructed in accordance with the highest standards applicable in 1953. The standards for new construction or major reconstruction of roads having the present traffic count of this road have now changed, calling for increased roadway and shoulder widths. No major reconstruction of this highway has occurred since 1953. In 1977 and 1978, a two-inch asphaltic concrete overlay was placed on the road surface, and the shoulders were brought up to grade level with the asphalt. Maintenance work is done continuously. The shoulders are approximately the same width as originally constructed.”

The trial court found that the shoulders of this highway had been maintained at approximately the same width as when it was originally constructed in 1953 and brought up to grade in 1978; i.e., 6 feet. The record fully supports this conclusion.
Trooper Ronald Rhodes, who investigated the accident, stated that the shoulder at the scene was of adequate width for Statum to have removed his car from the southbound lane of travel. He stated that Statum’s left tire would have been close to the edge of the blacktop but the vehicle could have been driven off the hard surface. Rhodes stated that the surface of the shoulder was a sandy red type soil with some gravel applied to the surface.
Oliver Broussard, administrator for the Department of Highways, stated that the shoulders were 6 feet wide as originally constructed and had been maintained on a regular basis. Also, he stated that, beyond the shoulder was a gradual slope toward the ditch. The shoulders are inspected once a week.
Ernest Corbello was an eye witness to the accident. He stopped and observed the scene after the accident. He stated that there was enough room on the shoulder for Statum to have parked his vehicle off the roadway. He also stated that, after the accident, he watched the wrecker with a car in tow utilize the shoulder in turning around and removing the damaged vehicles.
Also in evidence are photographs depicting views of the shoulders of the area. The views support the testimony of the investigating officer, Oliver Broussard and Ernest Corbello.
On the night in question, Statum was faced with an emergency situation where his lights went out as he drove along this highway. The night was dark and no lights were present in this area. Statum parked his vehicle in the northbound lane of travel with a small portion off the hard surface. Statum asked his wife if a flashlight was available. She told him she had left the light at home. He sat in the car for two or three minutes and then got out and went around to the front of the car and raised the hood. As he stood in front of the hood attempting to remedy the malfunction, Cor-mier hit the rear of the Statum car, causing injuries and death to Statum.
*538 Mrs. Statum was under the impression that her husband had parked their vehicle on the shoulder leaving only about 1 foot of their car on the hard surface. It is clear that she was in error. Whether Statum was also under this erroneous impression, we will never know. There is no evidence that Statum made any attempt to ascertain the position of his car with respect to the edge of the hard surface.
We conclude that the shoulder of Louisiana Highway 109 at the scene of the accident was wide enough for Statum to have safely parked his vehicle off the southbound lane of travel by using ordinary prudence and care. Why he failed to utilize the area will never be known. Under these circumstances, it cannot be said that the Department of Highways created an unreasonable risk of harm to Statum and his family. The shoulder at the scene cannot be considered as defective. The trial court correctly dismissed the suit against the Department of Highways.
Having come to the conclusion that the shoulder was adequate and was not defective, we do not need to address the remaining issues presented.
For these reasons, the judgment of the trial court is affirmed. Plaintiff-appellant is to pay the costs of this appeal.
AFFIRMED.