962 So.2d 1187 (2007)
Linda WILLIAMS, Plaintiff-Appellant
v.
CITY OF MANSFIELD, Defendant-Appellee.
No. 42,319-CA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
*1188 Davis Law Offices, LLC, by S.P. Davis, Sr., for Appellant.
Stamey & Miller, LLC, by Joseph B. Stamey, Erika F. Cedars, Natchitoches, for Appellee.
Before BROWN, STEWART, and DREW, JJ.
BROWN, Chief Judge.
Plaintiff, Linda Williams, sued the City of Mansfield for injuries she received when she stepped into a hole while walking across a ditch. At the close of plaintiff's case, the trial court granted defendant's motion for directed verdict (the proper motion in a case tried by the court is one for involuntary dismissal per La. C.C.P. art. 1672 B).[1] For the following reasons, we affirm.

Facts
On December 11, 2004, Linda Williams took her children and grandchildren to the Mansfield Christmas parade. They walked to the parade from plaintiff's father's house on Pea Street, turning on Van Buren and then up to Franklin Street where the parade would pass, a distance of about three blocks. The parade started at 11:00 a.m. When the parade ended plaintiff and the children walked east on Franklin Street to its intersection with Pea Street intending to turn left or north on Pea Street. There was no sidewalk or paved shoulder on Franklin Street and pedestrians would walk along a grassy area at the edge of Franklin Street. This grassy area declined into a ditch with concrete culverts. At the northwest corner of Franklin and Pea Streets two culverts had separated at the joint. Plaintiff, who was trying to catch up to her grandchildren, attempted to cross over the ditch and stepped into the separation/hole. A fire station is located across the street and Mansfield Fire Chief Lee Shavers assisted Ms. Williams in getting her foot out of the hole. No one actually testified as to whether the culverts were covered with dirt and grass; however, plaintiff testified that she would have been able to see the separation/hole if she had been looking at the ground.
After the accident, Ms. Williams complained of neck pain. On the day of the accident, Ms. Williams sought treatment at the DeSoto Medical Center Emergency Room. Plaintiff claims that her leg was swollen for a week after the accident and had a "sink" in it. Ms. Williams underwent physical therapy and saw Dr. Dharam Gurwara.
The accident was witnessed by Ricky Patton, who lived on the northwest corner of Franklin and Pea Streets. Patton testified that when he mowed his yard he would also cut the grass up to the edge of Franklin and he never complained to the City about its failure to maintain the area. Further, Patton testified that he never noticed the separation/hole in the culvert before Ms. Williams' accident. Patton also testified that the City, after Ms. Williams' accident, repaired the culvert and began mowing the area.
James Ruffin, the Director of Public Works for Mansfield, testified that the City had no written plan for inspection of streets and drainage; however, all complaints received by the City would be logged in and all repairs made thereafter *1189 noted. Ruffin testified that the City had received no complaints concerning the area or culvert in question. In addition, Ruffin testified that, upon receiving notice of the accident, the City erected a barrier around the hole and repaired the hole within a few days after the accident.
Ms. Williams sued the City, alleging that the City had custody of the area and was strictly and negligently liable for her injuries. Following the conclusion of Ms. Williams' case, the City moved for an (involuntary dismissal), arguing that plaintiff failed to prove the City had actual or constructive notice, or that the culvert created an unreasonable risk of harm as required by La. R.S. 9:2800.
The trial court granted the City's motion for (involuntary dismissal) stating in an oral opinion:
. . . one thing that neither of you talked about is the fact that this area is not an area that is maintained or designated for human passage. . . . This is not part of the street where people travel. This is not part of the sidewalk. . . . This is a ditch. This is not where people are supposed to go.

Discussion
In an action tried by the court, a motion for involuntary dismissal is appropriately made at the close of the evidence offered by the opposing party and requires the judge to evaluate the evidence and render a decision based on the preponderance of the evidence without any special inference in favor of the party opposing the motion. La. C.C.P. art. 1672 B; Sepulvado v. Time It Lube, Inc., 39,353 (La.App. 2d Cir.03/02/05), 895 So.2d 729.
The effect of La. R.S. 9:2800 is to eliminate the distinction between strict liability and negligence claims against public entities by requiring proof of either actual or constructive notice of a defect before a public entity can be held liable for damages caused by the defect. Jones v. Hawkins, 98-1259 (La.03/19/99), 731 So.2d 216. Liability is limited to cases in which the plaintiff can show that the public entity: (1) exercised care and custody of the defective thing; (2) had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence; (3) had a reasonable opportunity to remedy the defect; and (4) failed to remedy the defect. Cunningham v. City of Shreveport, 39,873 (La.App. 2d Cir.08/09/05), 908 So.2d 1214, writ denied, 05-2391 (La.04/17/06), 926 So.2d 510. The district court's findings pursuant to La. R.S. 9:2800 are subject to manifest error review. Graves v. Page, 96-2201 (La.11/07/97), 703 So.2d 566. Under the manifest error standard, the appellate court reviews the entire record to determine whether the trial court's findings were manifestly erroneous or clearly wrong. Stobart v. State through DOTD, 617 So.2d 880 (La.1993).
The issue in this case is whether the city had actual or constructive notice of the defect. Under La. R.S. 9:2800, constructive notice is defined as the existence of facts which infer actual knowledge. This definition allows for the inference of actual knowledge to be drawn from the facts demonstrating that the defective condition had existed for such a period of time that it should have been discovered and repaired if the public body had exercised reasonable care. Whitaker v. City of Bossier City, 35,972 (La.App. 2d Cir.04/05/02), 813 So.2d 1269; Hammons v. City of Tallulah, 30,091 (La.App.2d Cir.12/10/97), 705 So.2d 276, writs denied, 98-0407, 98-0440 (La.03/27/98), 716 So.2d 892, 894; Lutz v. City of Shreveport, 25,801 (La.App. 2d Cir.05/04/94), 637 So.2d 636, writ denied, 94-1487 (La.09/23/94), 642 So.2d 1294.
In Jones, supra, the supreme court held that a city's lack of a methodology to *1190 inspect its property does not impute constructive knowledge of defects. However, Ms. Williams argues that the present fact pattern more closely resembles St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964), wherein the supreme court held the City of New Orleans liable because the defect had existed for so long that the city should have discovered it through the exercise of its duty of reasonable care and prudence, not because the city had no plan for inspection. In the instant case, Ms. Williams argues that the City failed to exercise any responsibility for the area surrounding the hole and that the grass obscured the hole, thus creating a hidden danger.
We note that Ricky Patton testified that, before the accident, he mowed the area in question and there was no evidence that grass actually covered the culverts. In addition, Ms. Williams testified that she would have been able to see the hole had she been looking at the ground. We also note that St. Paul, supra, was decided by the supreme court 43 years ago, before critical changes to Louisiana's tort laws, particularly in the area of strict liability, were made.
Upon a full review of the record, we cannot find any error on the part of the trial court. Ms. Williams offered no evidence to contradict the trial court's finding that this was a ditch and "not where people are supposed to go." The City received no complaints on the condition of the culvert. These facts being undisputed, the trial court committed no error in holding that Ms. Williams failed to prove that the City had actual or constructive knowledge of the separation in the culvert as required by La. R.S. 9:2800. Failure to meet any one element of La. R.S. 9:2800 is fatal to a negligence claim against a public entity. Netecke v. State, ex rel. DOTD, 98-1182 (La.10/19/99), 747 So.2d 489.

Conclusion
For the reasons set forth above, the trial court's judgment dismissing plaintiff's action is AFFIRMED. Costs are assessed to plaintiff-appellant, Linda Williams.
NOTES
[1] A motion for a directed verdict under La. C.C.P. art. 1810 applies in a civil jury trial.