JANVIER, Judge.
Plaintiff appeals from a judgment dismissing his suit for damages against the *844 City of New Orleans based on his charge that on the night of February 14, 1963, he fell as he was stepping from the street to the sidewalk on Dauphine Street near the corner of St. Philip Street, and that his fall was caused by a defect or a hole in the sidewalk which was slightly under and adjacent to a short portion of a bent steel rail on the curb which was raised about an inch above the level of the sidewalk. He charges that this defect had existed for “such a period of time as to place defendant on notice, either actual or constructive, of the danger of same, and in spite of this, defendant took no steps to remedy same.”
The defendant City denied all of the allegations .of the petition and especially averred that plaintiff was guilty of contributory negligence in “failing to keep a proper lookout,” and in “failing to exercise ordinary care and prudence while walking on a sidewalk.”
The District Judge dismissed the suit and refused to grant a new trial. In his reasons for refusing to grant the new trial, he said: “The plaintiff had knowledge of the defect, in fact he reported it to the repair crew, and was therefore guilty of contributory negligence.”
This statement of the District Judge, that the plaintiff himself had reported the defect, is the only thing which has given us concern since, though we feel that plaintiff himself was guilty of contributory negligence, it is quite clear that it was not he who claimed to have reported the defect. This statement concerning a report was made by a neighbor and friend who said that many months before the accident when the street was being repaired, he saw one of the repair appliances strike and damage the curb and cause the hole in the sidewalk, and that he called this to the attention of those in charge of the repair work.
Though the hole in the sidewalk and the displaced edge of the curb undoubtedly constituted a hazard, they were not at the corner and were not near the center of the sidewalk, but were so close to the edge that they were not in the path of pedestrians using that part of the sidewalk usually made use of. Furthermore, the hole was almost directly under one of the lights which was similar to those on other corners in that area.
The building at that corner in front of which the hole was located was numbered 1000 Dauphine Street, and the plaintiff roomed in the building which was numbered 1008 Dauphine Street, so that the door of his residence was only about 60 or 80 feet from the defect, and it was his custom several times each day to go back and forth to a grocery and cold drink stand located on the other side of the street. Thus, during the eight months of his residence there, he had crossed that street at that corner and sometimes at that particular spot about eight feet from the corner several hundred times.
Plaintiff says that he usually crossed at the corner, but that sometimes, as on that night, since there was little vehicular traffic on the street, he took the shorter diagonal route which would mean that he crossed practically at that very spot.
While a pedestrian is not required to constantly focus his sight on the pavement on which he is walking, since plaintiff was stepping from the level of the street to the slightly higher level of the sidewalk, it was necessary that he at least glance downward as he stepped from the street to the sidewalk.
An attempt was made to show that the street light at that corner was not good, but the believable testimony on that point was woefully lacking, or perhaps it would be more accurate to say that it was obviously overdone. For instance, the principal witness of plaintiff, who had testified that he called the attention of the repair crew to the defect, also said that the light at the corner was dimmer than those in other areas. I-Ie said that “it is a small light and we objected to it being a small *845 light, they changed the light a few years back and put a small light in there and it doesn’t light up like it once did.” And he also said that “they have other bright lights there but Mayor Morrison changed that light I believe * *
On the other hand, a sidewalk inspector of the City said that at that corner there was the usual light and that “it is a very, very good light.”
The base of the light standard, which is shown in the photograph, evidences the fact that the light is almost directly over the hole in the edge of the pavement.
We are convinced that the plaintiff was probably well aware of the existence of the hole, and that even if he had not previously known of it, if he had been the least bit careful he would not have stepped into it.
We repeat that it is quite true that a pedestrian on a city sidewalk is not required to keep his eyes constantly focused on the surface of the sidewalk, but he is required to notice such defects as are obvious and such as would be noticed by the ordinarily careful pedestrian. This is especially true when he is required to step from one level to another.
In Tete v. Newark Insurance Company, La.App., 170 So.2d 248, we discussed the question of the duty to at least glance downward when negotiating an aisle in a shopping center. We quote the following from the case of Magoni v. Wells, La. App., 154 So.2d 524:
“ * * * we cannot understand why plaintiff, had he been paying attention, could have failed to observe, while walking down the passageway, that he was approaching a step down which must be negotiated for a descent to the lower level of the mezzanine floor.”
We do not lose sight of the fact that, while there are many things of which we may not take judicial notice, we cannot fail to note that, in the multitudinous areas in which a modern city maintains sidewalks, there unfortunately occur defects of various kinds, and in spite of all that can be done, there are always minor defects which, if not noticed by the pedestrian, may cause damage, and consequently, pedestrians must to some extent maintain at least a casual watchfulness for such defects. On this particular point, the Supreme Court in White v. City of Alexandria, 216 La. 308, 43 So.2d 618, said:
“ * * * However, he cannot be completely oblivious of its condition; he must exercise ordinary care when using it, having in mind the well recognized fact that throughout every city of any size in this state there exist irregularities in the walkways brought about by natural causes such as rains, expansion, soil erosion and tree roots.”
The facts here do not present a situation similar to that found in St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273. In Tete v. Newark Insurance Company, supra, we discussed this case and said that the Supreme Court had based its decision on the fact that the defect “was held to constitute a trap, was an obvious and dangerous defect and the accident happened after dark in an area shaded by trees. The only illumination, a light bulb on an adjacent garage, was ineffective and cast shadows obscuring the defect. * * *”
The facts here more closely resemble those found in Massicot v. City of New Orleans, La.App., 43 So.2d 621, in which we said:
“Even assuming, arguendo, that the sidewalk possessed defects sufficient to have caused the accident, and that defendant had constructive knowledge thereof, a recovery would nonetheless be denied plaintiff because it abundantly appears that he was guilty of negligence which contributed to his fall. A pedestrian may assume that the sidewalk is reasonably safe, and need not *846 keep his eyes constantly focused upon it, but he must see those defects which are obvious and apparent and which would he noticed by a reasonably ^nd ordinarily prudent passerby. White v. City of Alexandria, supra; Ansley v. City of New Orleans, La.App., 168 So. 343.”
The facts of that case startlingly resemble those found here, for although we found that the proof concerning the size of the hole was not completely borne out by the evidence, the plaintiff had claimed that in walking from the sidewalk to the street he “struck and caught his foot under a steel rod which had left the curbing and was protruding about 2 inches above the sidewalk. That this steel rod is used [in] binding the curbing at the edge of the sidewalk and had become partially detached from the same.”
Since we- find that plaintiff himself was guilty of contributory negligence, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.