CHEHARDY, Judge.
Suits Nos. 85-CA-210 and 85-CA-446 of our docket were consolidated for trial in this court for reasons explained hereinafter.
Plaintiff appeals from a judgment dismissing her suit for personal injuries received in a slip-and-fall accident on a sidewalk at West Jefferson General Hospital. Named defendants were the hospital, its liability insurer, and the Parish of Jefferson. The case was tried on April 2, 3, and 4, 1984. After plaintiff rested her case on April 3, an oral motion for a directed verdict was made on behalf of the parish. It was granted by the court.
At the conclusion of the trial on April 4, 1984, the matter was submitted to the jury as to the other defendants. In answer to jury interrogatories they found that while the hospital sidewalk was defective, it was not the proximate cause of plaintiff’s injury. In accordance with the jury verdict, judgment was rendered dismissing plaintiff’s suit.
A careful examination of the record after it was lodged in this court disclosed that *839 although the verdict of the jury was verbally made the judgment of the court, the only written judgment in the record was that dismissing the Parish of Jefferson. There was no signed judgment in the suit dismissing the hospital or its insurer. Therefore on our own motion we issued a show cause order to determine whether or not the appeal should be dismissed for lack of jurisdiction.
In response to our rule, plaintiff provided us with a written judgment signed on June 6, 1985, rendered in Chambers on the 4th day of April, 1984, affirming the directed verdict in favor of the Parish of Jefferson and dismissing plaintiffs suit against West Jefferson Hospital and its insurer with prejudice.
On July 18, 1985, plaintiff filed a second appeal founded upon the signed judgment of June 6. Both appeals relate to the April 18 trial on the merits. The issues, the facts and the assignments of error are identical. We permitted the record to be supplemented and consolidated both appeals to be heard together on our September docket.
Since we now have a signed judgment and a timely appeal from that judgment, the question of prematurity raised by our rule to show cause is now moot, and we will proceed to decide the case on the merits.
ON THE MERITS
On February 23, 1981, Mr. and Mrs. Larry Rubel went to visit their son, a patient at West Jefferson Hospital. They were accompanied by two friends. They parked the car some distance from the main entrance, walked across the parking lot and onto a sidewalk leading to the hospital. As they were nearing the main entrance a group of people leaving the hospital approached the Rubel party on the sidewalk, walking in the opposite direction.
The Rubels stepped off of the sidewalk to allow the other group to pass. When Mrs. Rubel stepped back up to the sidewalk with her right foot she twisted her ankle and fell to the ground facing the parking lot roadway. Plaintiff claims she fell because of a defective sidewalk.
Mrs. Rubel was unable to walk or stand after the accident. She was taken to the hospital for emergency treatment and then admitted to the hospital where she was operated on for a trimalleolar fracture of the right ankle. She now has a 10% permanent partial disability of the right ankle as a result of the fall.
Plaintiff claims the sole proximate cause of the accident was the defective sidewalk. The jury agreed the sidewalk was defective, but found it was not the proximate cause of plaintiff’s injuries.
Appellant contends the jury committed the following errors: (1) in finding plaintiffs injuries were not caused by the defective sidewalk; (2) in misapplying the legal concepts of preponderance of the evidence, circumstantial evidence and victim fault; and (3) in failing to award plaintiff $104,-210.79 in view of the severity and disabling nature of her injury.
Relative to appellant’s first contention she relies on the testimony of herself and her husband; Dr. Gordon Gidman, her treating physician; and Mr. Wilford Gal-lard, a safety expert who testified on her behalf.
A careful examination of Mr. and Mrs. Rubel’s testimony reveals neither one of them knew how she fell or what caused her fall.
Mrs. Rubel testified:
“Q. The night of the accident, when you were walking down the sidewalk, I believe you said you saw some people coming toward you on the sidewalk, and then you stepped off the sidewalk into the street, is that right?
A. Yes sir.
Q. Okay. Do you remember when you stepped off the sidewalk, do you remember stepping down to a different level, or was it — did you step onto the street on the same level? *840 Did you step down off a curb onto the street?
A. I couldn’t recall that.
Q. You don’t remember? Okay, then when you stepped back to the sidewalk, you don’t remember again whether you stepped up or not?
A. All I remember is we were getting back up on the sidewalk after the people had passed, and as I was putting my right foot forward and I was fixing to bring my left foot up, I went down and turned.
Q. Right. All you know is that you fell, but you don’t know how you fell.
A. I know I turned facing the street.
Q. And you weren’t looking down to see where you were placing your feet at the time were you?
A. I couldn’t recall that. I couldn’t say if I was or if I was looking up. That’s how long it’s been.
Q. Okay. Well again, let me remind you of the deposition and refer you to Page 41 of the deposition that was taken in this case where you were asked the question whether you were looking to see where you were going, and at Line 6 on Page 41 of your deposition you were asked, ‘You didn’t see a crack in the sidewalk,’ and your answer at Line 8 was, T don’t look down when I am walking.’ Is that — do you recall that testimony?
A. Right offhand? It just barely comes to my mind.
Q. And as far as you can remember, I know it's been a while since the accident, your testimony today is no different.
A. What do you mean by that?
Q. You don’t dispute this statement that you weren’t looking down.
A. No, I don’t dispute it.
* * * 41 * #
Q. So you can’t say exactly where you fell, other than the general area of the hospital grounds.
A. I can’t answer that for you. I don’t remember.
Q. So your answer then is you cannot say exactly where you fell. That’s a correct statement?
A. All I know — all I can say is I fell on the sidewalk, I fell down and faced the street.”
While Mr. Rubel was right next to his wife on her left and about one-half step behind her, he was looking ahead to see where he was going. When asked if he saw where her feet were placed when she fell, he answered, “Not really.”
When asked how she fell he replied: “Well I couldn’t — I know she fell — when she went down, she went around in a twisted motion, and she was facing almost towards me when she completed the fall, so she did a complete 120° circle.”
Mr. Rubel went to the hospital the following morning with a Polaroid camera to take photographs of the approximate area where he thought his wife fell, and at a later date professional photographs were made of the area.
At the time of the accident there was some construction work being done on the building itself at upper levels (three additional floors were being added) and there were danger signs posted warning of falling weld slag, and men working above. However plaintiff visited in the evening and there is no evidence that anyone was working on the building or that any debris was on the sidewalk.
As to the sidewalk itself, Erie Hebert, Jr., the assistant director of the hospital, testified that a slanting curb, painted golden yellow to distinguish it from the sidewalk, is adjacent to the sidewalk. At the area where plaintiff allegedly fell the curbing is raised about ¾ inches above the sidewalk and is 2 or 3 feet in length. The curbing is supposed to be level with the sidewalk, as it is on the rest of the area.
*841 The sidewalk is the principal entry/exit from the hospital and is very heavily trav-elled. Mr. Hebert himself uses it many times daily. It is a standard sidewalk about 4 feet wide. He never noticed the raised curb portion prior to plaintiffs fall.
The curbing was painted yellow as a caution that there was a different slope or height level to the grade of the sidewalk. When the difference of the grade level between the curb and the sidewalk in the 2-to 3-foot area was brought to the hospital’s attention, the following month construction workers were requested to level it off.
Edward Sessum, Jr., the chief engineer of the hospital, also testified that the curbing was raised somewhat above the sidewalk.
Mr. Gallardo, who was plaintiff’s safety expert, reconstructed the accident by reading the depositions of Mr. Hebert and Mr. Sessum, and looked at the photographs in evidence. He did not go to the site because it had been repaired.
Gallardo concluded there was a definite tripping, slip, stumbling hazard with regard to the curbing and that the curbing was camouflaged because the curb and the raised portion of the sidewalk would blend in with each other.
He also concluded the danger, and falling slag signs would cause people to look in the air as opposed to looking at the ground. (We note here the Rubels never noticed any signs in the area.) He also concluded the curb-sidewalk variation would be in violation of federal rules and good safety practices of the National Safety Counsel’s Accident Prevention manual. He considered it a dangerous defect.
Dr. Gidman testified plaintiff’s injuries would be consistent with an accident which could have occurred stepping over a raised curbing.
We agree with the jury findings that the curbing was defective. However the mere fact that plaintiff fell does not make such a condition unreasonably dangerous.
The courts do not expect a landowner to keep the sidewalks in perfect condition. In the cases of Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); and Tipton v. Bossier Parish School Bd., 441 So.2d 453 (La.App.2d Cir.1983), areas of llk- to 2-inch differences in elevation were held not to be unreasonable.
It is a well-settled principle of our law that findings of fact should not be disturbed on appeal in the absence of manifest error, Canter v. Koehring Company, 283 So.2d 716 (La.1973). In the absence of a showing that the jury’s findings are clearly wrong it is the duty of the appellate court to affirm those findings. Soileau v. South Cent. Bell Tel. Co., 406 So.2d 182 (La.1981); Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
The testimony of the only two witnesses to the accident fails to establish the raised curb was the cause of the accident. Plaintiff only knew she fell with a twisting motion as she stepped onto the sidewalk, and the husband did not see her fall. Based on their testimony, plaintiff has not borne the burden of proof that the raised curbing caused the fall. We also note the two friends present at the time were not called as witnesses by plaintiff.
Relative to appellant’s second contention, plaintiff asserts that the jury’s application of the legal concept of preponderance of the evidence, circumstantial evidence and victim fault are erroneous. It is plaintiff’s position that the jury wanted plaintiff to prove her case beyond a reasonable doubt and failed to recognize that plaintiff could prove her case by direct or circumstantial evidence.
The trial judge correctly instructed the jury relative to the legal concepts applicable and there is no evidence to support the allegations that they misapplied his instructions.
In view of our determination of plaintiff’s first two assignments of error, we find it unnecessary to discuss the final contention relative to a suggested award of $104,210.70.
*842 For the reasons assigned the judgment appealed from, signed by the trial court on June 6, 1985, in Suit No. 85-CA-446 is affirmed.
AFFIRMED.