522 So.2d 677 (1988)
Cathy Duet, wife of/and Gregory Hall RICHOUX, Individually and as Administrator of the Estates of His minor Children, Mark Richoux and Meredith Richoux
v.
METROPOLITAN GASTROENTEROLOGY, a Professional Medical Corporation.
Nos. 87-CA-713, 87-CA-714.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 1988.
Albert H. Hanemann, Jr., Michael J. Furman, New Orleans, for defendants/appellees.
Burt K. Carnahan, Lisa Montgomery Lewis, Metairie, for plaintiff/appellant.
Before CHEHARDY, C.J., and DUFRESNE and WICKER, JJ.
WICKER, Judge.
The plaintiffs, Cathy and Gregory Richoux and their minor children, appeal a judgment dismissing their medical malpractice claims against Thomas F. McCaffery, M.D. and Metropolitan Gastroenterology Associates, the defendants. The sole issue is whether the jury verdict was manifestly erroneous. We affirm.
Mrs. Richoux originally consulted Dr. McCaffery in 1975, when she was in her *678 early twenties, for rectal bleeding. Dr. McCaffery diagnosed her as having anal fissures. She consulted him again in July of 1983, complaining of blood-streaked stool. Dr. McCaffery's examination consisted of a digital probe and proctoscopy, and his diagnosis was internal hemorrhoids. He prescribed suppositories and instructed Mrs. Richoux to obtain slides at home in order that he could test for blood in the stool. The results of the hemoccult test were negative. The bleeding continued, however; and Dr. McCaffery refilled the prescription by telephone.
By May of 1984 the bleeding was worse, and Mrs. Richoux had pain after bowel movements. She consulted Dr. McCaffery again in June of 1984, complaining of pain and bloody stool. He repeated the digital examination, used an anuscope, and also had performed a barium enema x-ray. The results of the x-ray and of more hemoccult slides were negative. Dr. McCaffery prescribed more suppositories.
Since neither the bleeding nor the pain improved, Mrs. Richoux went to see her family physician, John Finn, M.D., in August. Dr. Finn's anuscopic examination revealed a tumor; and he referred her to Frank Rizza, M.D., a surgeon, that afternoon. Dr. Rizza performed digital and proctoscopic examinations, both of which revealed a lesion.
Mrs. Richoux entered the hospital the following day for a biopsy, which revealed rectal cancer. She underwent a colostomy, a course of radiation treatment, and a vaginal cesium implant. In February of 1984, Mrs. Richoux was diagnosed as having breast cancer, which resulted in surgery for the removal of that tumor plus lymph nodes and additional radiation treatment.
Mrs. Richoux and her husband, individually and on behalf of their six- and ten-year-old children, filed suit. The jury which heard the case voted nine to three in favor of Dr. McCaffery and Metropolitan Gastroenterology Associates.
L.S.A.-R.S. 9:2794 sets out the standard of proof in medical malpractice actions:
In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
All the expert testimony in medical malpractice cases should be designed to answer those three questions: what is the required degree of care and skill of doctors practicing the defendant's speciality, did the defendant lack this required degree of care and skill, and was the plaintiff harmed by this lack.
Mrs. Richoux and several medical experts testified at this trial, and we summarize the relevant portions of their testimony.
Kathy Richoux
At her July 1983 visit, Mrs. Richoux complained of blood-smeared stools. Dr. McCaffery performed digital and proctoscopic examinations and diagnosed her as having internal hemorrhoids. He gave her hemoccult slides to prepare at home. She *679 was positive that some blood was included on each slide. She was not telephoned with the results of the test and didn't find out they were negative until she called the office in November of 1983. She continued to have bleeding problems, and she would call Dr. McCaffery's office for refills of her prescription as well as obtaining the medication over the counter. The bleeding got worse and was accompanied by pain, so she saw Dr. McCaffery again in June of 1984. At that time, she complained not only of daily bleeding but of pain across her buttocks and radiating down her legs. She was taking Tylenol on a daily basis. Examinations were again performed, and Dr. McCaffery gave her additional hemoccult slides and ordered a barium enema X-ray. She was not given a diagnosis, but she was assured by the doctor that nothing serious was wrong with her and that she needn't worry. She once again made sure to include blood on the hemoccult samples, but she was once again told that the test results were negative. At the time of trial, she still had an unused box of her prescription medication, obtained by calling Dr. McCaffery's office, dated August 13, 1984. When Dr. Finn examined her in August, there was enough blood present in the rectum to fill five swabs.
Medical Testimony
Several doctors testified for Mrs. Richoux and for Dr. McCaffery and Metropolitan Gastroenterology Associates: Barry F. Faust, M.D., the pathologist who examined the tumor after it was removed; Stephen Price, Jr., M.D., an examining gastroenterologist; Alan Stolier, M.D., a general surgeon with a sub-specialty in oncology who examined and operated on Mrs. Richoux; John J. Finn, Jr., M.D., Mrs. Richoux's family physician; Frank E. Rizza, M.D., a general surgeon who biopsied the tumor; Ira Klein, M.D., a gastroenterologist who reviewed the records but did not examine Mrs. Richoux; Terry Kraus, M.D., who administered radiation therapy to Mrs. Richoux; William Stein, III, M.D., an oncologist who reviewed the records but did not examine Mrs. Richoux; William Meyers, Jr., M.D., a gastroenterologist who served on the medical review panel convened to review this case under the provisions of L.S.A.R.S. 40:1299 et seq.; and Thomas D. McCaffery, Jr., M.D., the defendant.
The various doctors differed in their perception of the tumor's size from between one centimeter[1] in diameter to five centimeters in size. The difference was explained by the fact of its growth in the interim between discovery and removal and by the differences in perspective, i.e., a lesion inside a wrinkled tube as opposed to one on a specimen laid out flat. The tumor was very thin, only four millimeters in depth. It was certainly present when Dr. McCaffery examined Mrs. Richoux in May of 1984 and may have been present in July of 1983, although it would have been smaller. The medical experts differed in their opinions of whether Mrs. Richoux's tumor was a slow-or fast-growing one.
Most of the doctors felt that a history of ulcerative colitis in Mrs. Richoux's sister and stomach cancer in her mother and grandfather did not predispose her to cancer. The exceptions were Drs. Rizza and Klein, who felt that a family history of cancer indicates a greater risk for most types of cancer. The doctors agreed that internal hemorrhoids are the likeliest cause of rectal bleeding in a person as young as Mrs. Richoux and that rectal cancer is rare in someone her age. All but one expert agreed that either the proctoscope or the anuscope was an appropriate tool for the discovery of a tumor right near the anus and that the colonoscope, which is a much longer instrument, wasn't necessary or desirable. Dr. Klein disagreed; in his opinion the colonoscope is the appropriate standard of care.
Dr. Klein was also the only doctor who testified that Dr. McCaffery failed to meet the appropriate standard of care for gastroenterologists; and there was testimony to the contrary, including the unanimous opinion of the review panel. Dr. Stolier testified that a colostomy would have been necessary even if Mrs. Richoux's tumor had been discovered in July of 1983; and Dr. Kraus agreed with him. None of the *680 doctors testified that earlier detection would have made the colostomy unnecessary. Furthermore, there was unrebutted testimony that Mrs. Richoux's breast cancer was completely unrelated to either her rectal cancer or the radiation treatment.
In our evaluation of this extensive opinion testimony, we cannot say that the conclusions of the finders of fact were clearly wrong. Only one of the ten medical witnesses (including Dr. McCaffery) testified that Dr. McCaffery "either lacked [the requisite] degree of knowledge or skill or failed to use reasonable care and application of that skill...." L.S.A.-R.S. 9:2794, subd. A(2). While we do not intend to weigh the numbers of experts on either side of a factual issue, we are impressed by this nearly unanimous approval of Dr. McCaffery's treatment and by the finding of the medical review panel convened to review this case. More important still, no medical expert, including the one retained by Mr. and Mrs. Richoux, testified that she "suffered injuries that would not otherwise have been incurred." L.S.A.-R.S. 9:2794, subd. A(3). On the contrary, all experts who were questioned on the matter testified that Mrs. Richoux would have required a colostomy even if her tumor had been discovered over one year earlier.
The jury concluded that Mrs. Richoux had not met her burden of proving medical malpractice. "When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error." Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1979). Accord: Rubel v. West Jefferson General Hosp., 477 So.2d 838 (La.App. 5th Cir.1985), writ den. 478 So.2d 1234 (La.1985). We affirm the judgment of the trial court and assign the costs of this appeal to Mr. and Mrs. Richoux.
AFFIRMED.
NOTES
[1] One inch equals 2.54 centimeters and 25.4 millimeters.