537 So.2d 844 (1989)
Gloria H. DEBLOIS
v.
REPUBLIC/VANGUARD INSURANCE COMPANY.
No. 88-CA-552.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1989.
Writ Denied March 27, 1989.
Joseph W. Rausch, Michael J. Laughlin, Stassi, Rausch & Giordano, New Orleans, for defendant-appellant.
*845 James P. DeSonier, Covington, for plaintiff-appellee.
Before GRISBAUM, DUFRESNE and WICKER, JJ.
GRISBAUM, Judge.
This is a personal injury matter. The plaintiff obtained a judgment against the insurer of the property owner on whose sidewalk/walkway she fell and broke her hip. The insurer, Republic/Vanguard Insurance Company, now appeals, contesting liability. We reverse.
ISSUE
Whether the trial court erred in finding that the sidewalk/walkway presented an unreasonable risk of harm which was the "cause-in-fact" of the fall and resulting injuries.
FACTUAL SUMMARY
The record facts reflect that the plaintiff did fall and suffer a broken hip on October 6, 1986. Moreover, the medical bills were stipulated to at trial; accordingly, the testimony focused on the narrow topics of the plaintiff's overall health at the time of the accident and, more importantly, on the circumstances of her fall.
LAW
La.C.C. art. 2317, in part, states, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." (emphasis added). Additionally, La.C.C. art. 2322 states, "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." The Louisiana Supreme Court in White v. City of Alexandria, 216 La. 308, 43 So.2d 618 (La.1949), in treating a slip-and-fall on a sidewalk matter observed:
Defects in sidewalks that are not in the nature of traps, or from which danger cannot reasonably be anticipated, provide no actionable negligence. Such ways of passage are intended for public use, of course, and a pedestrian is entitled to assume that they are not dangerous. Further, he is not required to constantly observe the surface of the walk or to exercise the care that would be necessary in traversing a jungle. However, he cannot be completely oblivious of its condition; he must exercise ordinary care when using it, having in mind the well[-]recognized fact that throughout every city of any size in this state there exists irregularities in the walkways brought about by natural causes such as rains, expansion, soil erosion and tree roots.
For determining what is a dangerous defect in a sidewalk (that which renders the municipality responsible in damages to a pedestrian injured as a consequence thereof) there is no fixed rule; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question of whether or not the walk was maintained in a reasonable [sic] safe condition for persons exercising ordinary care and prudence.
Id. at 620, 43 So.2d 618. Additionally, the Louisiana Supreme Court exhaustively treated La.C.C. arts. 2317, 2322 liability in Entrevia v. Hood, 427 So.2d 1146 (La. 1983), emphasizing that
The requirement that an injured person in order to recover under Article 2317 or 2322 must prove that the risk from which his damage resulted posed an unreasonable risk of harm places a limitation on a building owner's strict liability. He cannot be held responsible for all injuries resulting from any risk posed by his building, only those caused by an unreasonable risk of harm to others.
Id. at 1149. At the same time, it cautioned that
The unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court to symbolize the judicial process required by the civil code. Since Articles 2317 and 2322 state general precepts and not detailed rules for all concrete cases, it becomes the interpreter's duty to decide which risks are encompassed *846 by the codal obligations from the standpoint of justice and social utility.
Id.
We are further aided in exercising our standard of review by our fellow Circuits that have helped narrow our inquiry by formulating that where a risk of harm is shown to be created, a plaintiff must in addition show "with reasonable certainty" a connection between the fall and her injuries. Oliver v. Pitarro, 129 So.2d 39, 41 (La.App.2d Cir.1961). See also Campbell v. Tidwell, 407 So.2d 1359, 1362 (La.App. 3d Cir.1981). The courts have also taken note of a plaintiff's familiarity with the environment in which he fell and of the difficulty of maintaining pristine sidewalks. Pappadakis v. City of New Orleans, 182 So.2d 843, 844, 845 (La.App. 4th Cir.1966). Importantly, we note the Third Circuit has been reluctant, in the absence of any explanation of the mechanics of a fall, to consider the fall itself as proof of some unreasonable defect. Greenhouse v. Great Southwest Fire Ins. Co., 413 So.2d 352 (La.App. 3d Cir.1982). As pointed out in Cloud v. State of La., 420 So.2d 1259, 1265 (La.App. 3d Cir.1982), writ denied, 423 So.2d 1166 and 1167 (La.1982), such a rationale would make owners the de facto insurers of all persons on their premises. Finally, our Circuit has stated that a landowner is not expected to maintain her sidewalks in perfect condition and that even defective walkways may give rise to no legal fault in that they pose no unreasonable risk of harm. Rubel v. W. Jefferson Gen. Hosp., 477 So. 2d 838, 841 (La.App. 5th Cir.1985), writ denied, 478 So.2d 1234 (La.1985).
We note the trial court in its Reasons for Judgment, in pertinent part, states:
The plaintiff was going to the home of Mrs. Stanley J. Barrosse to get a ride with Mrs. Barrosse [the homeowner] to a church meeting. Plaintiff testified that as she was walking up the walkway leading to the Barrosse's home from the sidewalk, she tripped and fell onto the walkway...
The plaintiff's son testified that when he came to pick his mother up she was on this walkway. The court is of the opinion that this crack and the loose bits of concrete around the crack present an unreasonable risk of harm and this defendant's insured is liable, which liability was insured by defendant's insurance company.
There is a conflict in the testimony as to where the plaintiff fell. Two witnesses, including the homeowner and a neighbor, testified that plaintiff fell on the sidewalk by the driveway ... and that plaintiff did not appear to trip but simply fell down. The court is of the opinion that another photo ... shows other sections of cracks on the sidewalk which likewise present an unreasonable risk of harm.
The court is of the opinion that the fall was more likely than not on the walkway[,] as plaintiff and her son testified, rather than on the sidewalk.
Ordinarily, the sidewalk is not the liability of the homeowner. In this case, however, it appears that the sidewalk was cracked by the homeowner's action in backing large dump trucks over the sidewalk[,] which seriously cracked the sidewalk and driveway apron. The photograph... shows that large trucks were parked adjacent to the home at 812 Ridgeway Drive. It is apparent that driving that truck over the sidewalk would cause such cracking, and accordingly, present [a] hazard to pedestrians using the sidewalk. This sidewalk cracking, attributable to the homeowner, would make the homeowner liable. Randall Vs. Feducia, 499 So.2d 458 (La. App. [2d] Cir.1986)[.]
Under either scenario, the homeowner is liable to plaintiff and the defendant's insurance company is liable.
The court is aware that plaintiff is a recovered alcoholic, but there is no evidence that she was in anyway under the influence of alcohol at the time of the incident.
The evidence adduced at trial does not indicate that plaintiff failed to exercise ordinary care, or that she failed to look [at] and note the condition of the sidewalk or walkway, not that there was a safe course for plaintiff to follow....

*847 There was no safe walkway as alleged by the defendant to show that plaintiff was at fault to bar the claim, nor any showing of comparative negligence which would limit plaintiff's recovery.
FACTS
Upon review of the record testimony, we see Mrs. Gloria H. Deblois stated that she lived in her Ridgewood Drive home for about 41 years prior to the accident and reports that on the evening of October 6, between 6:50 and 6:55 p.m., she was on her way to a meeting at St. Jude. She testified that it was "just about dusk" on a cool, misty evening, and she explains that she walked across the street to meet her neighbor and then fell. As she describes it, she was to meet
Sylvia Barrosse, at 812 Ridgewood, and she would occasionally go with us. And this particular night, instead of waiting for Sylvia to go get me, I walked across the street, never dreaming I would walk in a fate worse than death, and that is when I fell. I stumbled. I remember tripping on something. I can't remember what it was, whether it was a crack or stick or whatever it might be on the sidewalk, but I remember falling. Something was carrying me forward, and I remember the landing that is in front of the house, and I suddenly had a fear of splitting my head open on that concrete.
I remember reaching up for my glasses, twisting to my left and going down. And when I hit the ground, I was in such a state of shock that the pain was so severe, I couldn't feel anything for a moment except to say, Please, somebody get my son.
Mrs. Deblois admitted having previously fallen in her downstairs bathroom; however, upon a trip to the hospital, she found that nothing was broken. On cross-examination, she says she had been to the Barrosse house on occasions prior to the accident; however, she disclaims any familiarity with the sidewalks and walkways. When asked, she admits walking on the sidewalk previously and states that she knew, specifically, that some of the sidewalks had cracks in them.
As to the cause of the fall, her testimony reflects the following:
A I know I tripped. That is all I can tell honestly.
Q But you can't honestly say what caused you to trip, can you?
A No, I cannot. I can only tell you I tripped on something. It could have been a stick that was there, maybe the wind blew a twig. I don't know. I know I tripped.
Q And as you were walking immediately prior to your fall, you did not look at the path in front of you, did you?
A No, I didn't.
Mrs. Deblois was 64 years of age at the time of the accident.
The plaintiff's son testified that he found his mother about half way up the walkway leading from the sidewalk to the Barrosse residence. He states that his mother was not in the best of health.
We also see Dr. Rudolph Hamsa, who testified concerning the plaintiff's injuries and who was called by the plaintiff, states that she suffers from "severe osteoporosis." On cross-examination, he revealed that some persons with osteoporosis suffer fractures before hitting the ground. Apparently, fifty to sixty percent of victims of osteoporosis who suffer hip "neck" injuries fall because their hips break, and, thus, do not break their hips after falling.
First called by the defendants was Dart J. Romano, an independent insurance investigator who states in response to a query by the court that the edges of the sidewalk were "pretty much even" across the crack.
Next called by the defendants was Mrs. Elenore Delaney, who lives diagonally across from the plaintiff and to the right of Sylvia Barrosse. She saw Mrs. Deblois fall, she says, relating the incident as follows:
Q When you saw Mrs. De Blois fall, could you describe how she fell? Describe the fall.
*848 A Well, she crossed over, she was crossing the street. I watched her, and she just fell. I mean, she was walking and the first thing I know, she was on the ground. I didn't see her stumble or anything.
ANALYSIS
In light of our statutory mandate and our jurisprudential guidelines, especially bearing in mind the Arceneaux rule as our standard of review, we see a plaintiff who has lived in her neighborhood for some 40 years, who was surely familiar with the walkways there. By her admission, however, she was not paying attention to her course, although the weather was tolerably good and nightfall had not yet come. Her testimony reveals, finally, that she cannot explain any mechanism for her fall, and, even if we were able to isolate the "crack" in the sidewalk as the cause, we must conclude the cracks hereat least on the sidewalk and the walkwayare, as revealed by the photographs of record, singularly ordinary cracks in concrete. The custodian of a sidewalk has no duty to fill and level each expansion joint therein, even though the resultant small crevices might cause accidents. See May v. Lafayette Parish Police Jury, 487 So.2d 503 (La.App. 3d Cir.1986), writ denied, 489 So.2d 1276 (La.1986). In short, although we can sympathize with the plaintiff and agree in toto that she did fall and did incur serious injuries, this sad event cannot be interpreted as producing legal fault on the part of the homeowner or her insurer. Accordingly, we find that the trial court did not have a reasonable, factual basis for its finding of fact; therefore, it erred as a matter of law in concluding there was fault on the part of the homeowner-insurer.
Finally, in light of our conclusion, we consider moot other matters raised.[1]
For the reasons assigned, the judgment of the trial court is reversed. All costs of this appeal are to be assessed against the appellee.
REVERSED.
NOTES
[1] The appellant on November 10, 1988 filed in this Court a motion to strike the appellee's prayer for an increase in her damage award and the argument offered in support of same.